MARGARET E. CULVER *vs.* PETER R. L. HARDENBERGH.

| 37 | 225 |
|----|-----|
| 40 | 298 |
| 40 | 300 |
| 37 | 225 |
| 47 | 121 |
| 47 | 529 |
| 37 | 225 |
| 61 | 447 |
| 37 | 225 |
| 71 | 244 |

## July 20, 1887.

**Estates of Decedents—Sale of Real Estate by Administrator—Order of Confirmation.**—Upon a sale of the real estate of a deceased person, under license of the probate court, the order of confirmation passes on nothing but the acts of the executor or administrator in making the sale.

**Same.**—An executor's or administrator's sale of real estate cannot be made by one not executor or administrator.

**Same.**—Whether there may be an administrator *de facto*, *quære*.

**Same.**—Cases of *Davis* v. *Hudson*, 29 Minn. 27, and *Mousseau's Will*, 30 Minn. 202, considered and distinguished.

**Same—Limitation of Time.**—Laws 1879, *c.* 18, operated to repeal Laws 1876, *c.* 37, § 3, so far as the latter limited the time within which the real estate of deceased persons may be sold for payment of debts.

**Same—Order Extending Time to Sell.**—An order extending the time for selling the real estate of a deceased person for payment of debts need not, to be valid, be indorsed on the administrator's certified copy of the order or sale.

**Same — Sale of Mortgaged Real Estate free from Lien of Mortgage.**—Real estate which the administrator was by the order for sale authorized to sell at private sale, for cash, at not less than the appraised value, subject to all liens, taxes, and incumbrances, was subject to a mortgage, the debt secured by it being a claim proved against the estate. He sold the real estate, (at not less than the appraised value,) the price to be paid and applied in part-payment of said claim against the estate; the real estate sold to be discharged from the mortgage by the holder and owner thereof. *Held*, that the sale was regular, under Laws 1881, *c.* 43.

**Probate Court—Jurisdiction—Validity of Appointment of Administrator.**—When a probate court legally probates a will, or appoints a first administrator, it thereby acquires jurisdiction to direct and control the administration; and such jurisdiction continues over the administration, as one proceeding, till its close; and all the court does in the course and for the purpose of the administration, including the removal or discharge of administrators, and the appointment of others, is sustained by the jurisdiction thus acquired.

v.37M.—15

**Same.**—Gen. St. 1878, c. 51, §§ 11, 13, do not contemplate the appointment of an administrator when there is already one whose authority has not been extinguished. But if the court make such appointment it is only error, and is valid unless corrected on appeal.

The plaintiff, claiming to be the owner of an undivided one-twelfth of certain land in Ramsey county, brought this action in the district court for that county, to determine the adverse claims of the defendant thereto. The action was tried before *Simons, J.*, without a jury, and judgment directed for plaintiff. Defendant appeals from an order refusing a new trial.

*C. K. Davis, Chas. E. Otis, Samuel Morrison, H. C. Eller* and *Rogers & Hadley*, for appellant.

*McMillan & Beals*, for respondent.

The probate court had no jurisdiction to appoint Hoyt an administrator, and he never became such administrator. *Rhode Island* v. *Mass.*, 12 Pet. 657; *Mousseau's Will*, 30 Minn. 202; *Griffith* v. *Wright*, 18 Ga. 173; *Roderigas* v. *East River Sav. Inst.*, 63 N. Y. 460, 466; *State* v. *Probate Court*, 19 Minn. 85, (117, 126;) *Croxton* v. *Renner*, 103 Ind. 223, (2 N. E. Rep. 601;) *Wilkinson* v. *Winne*, 15 Minn. 123, (159, 166;) *Griffith* v. *Frazier*, 8 Cranch, 9; *Unknown Heirs* v. *Baker*, 23 Ill. 484, 490; *Flinn* v. *Chase*, 4 Denio, 85, 90; *Sitzman* v. *Pacquette*, 13 Wis. 291; *Springs* v. *Irwin*, 6 Ired. 27; *Rambo* v. *Wyatt*, 32 Ala. 363, (70 Am. Dec. 544;) *Humes* v. *Cox*, 1 Pinney, (Wis.) 551; *Holmes* v. *Or. & Cal. Ry.*, 6 Sawyer, 262; Freeman, Void Judicial Sales, § 7; *Haynes* v. *Meeks*, 20 Cal. 288; *Ryno* v. *Ryno*, 27 N. J. Eq. 522; *Quidort* v. *Pergeaux*, 18 N. J. Eq. 472; *Creath* v. *Brent*, 3 Dana, (Ky.) 129; *Taylor* v. *Hosick*, 13 Kan. 518; *Landers* v. *Stone*, 45 Ind. 404; *Valle* v. *Fleming*, 19 Mo. 454, (61 Am. Dec. 566;) *Allen* v. *Kellam*, 69 Ala. 442; *Ex parte Clarke*, 2 Va. Cases, 230; *Bean* v. *Chapman*, 73 Ala. 140; *Nelson* v. *Boynton*, 54 Ala. 368; *Matthews* v. *Douthitt*, 27 Ala. 273, (62 Am. Dec. 765.)

The sale by Hoyt was void because made more than three years after the death of the owner. *In re Ackerman*, 33 Minn. 54; *Gates* v. *Shugrue*, 35 Minn. 392, (29 N. W. Rep. 57.)

GILFILLAN, C. J.[1] Action to determine adverse claims to real es-

---

[1] Berry, J., because of illness, took no part in this case.

tate. Plaintiff claims as devisee under the will of George Culver; defendant, under an alleged sale by the administrator of the estate of Culver. Culver died March 13, 1879, leaving a will, in which he nominated George L. Otis and this plaintiff executor and executrix thereof. The will was duly admitted to probate in the probate court of Ramsey county, April 23, 1879, and, the persons nominated by the will having declined to serve, that court appointed Horace P. Rugg and Robert A. Smith administrators with the will annexed, and letters were duly issued to them March 2, 1880. Smith was, upon his own petition and resignation, discharged, and in the order discharging him the court appointed John F. Hoyt administrator *de bonis non* with the will annexed, and he accepted and qualified, and letters issued to him March 4, 1880. July 10, 1880, Rugg and Hoyt, as administrators, filed a petition asking for license to them to sell certain real estate belonging to said estate, including that in controversy in this action, to pay debts of the estate, and on the same day the court made an order appointing a time and place for hearing on the petition, and citing all persons interested in the estate to appear at such time and place, and show cause why the license should not be granted, and prescribing a mode of serving the order. It was served in the manner prescribed, it being served personally on each of the devisees under the will, and each of them signed a written acknowledgment of service thereof by "John F. Hoyt, one of the administrators of said estate, making said petition, and named in said order," which was filed in said court.

On August 30, 1880, the day appointed in said order, at the time and place therein specified, the matter came on for hearing, and the court thereupon made an order whereby said Rugg and Hoyt, as administrators, were licensed, ordered, and directed to sell certain real estate, including that here in controversy, at private sale, subject to all liens and incumbrances thereon. No notice of sale was required, but they were directed to take the oath prescribed by law, and give bond as therein specified, to cause the real estate to be appraised by two competent persons to be approved by the court, and not to sell the real estate for less than its full appraised value, nor after the expiration of one year from the date of the order, and after a sale to

make report to the court. On the same day the court, by order, appointed two appraisers.

On September 17, 1880, Rugg was by order of the court, on his petition and resignation, discharged from the duties of said trust. On the same day he and Hoyt filed their accounts, and the court, by order, appointed a time and place for examination thereof, and prescribed how notice thereof should be published. Such notice was so published, and, at the time and place specified in said order, such accounts were examined, adjusted, and settled. In November, 1880, Hoyt took the oath and filed the bond prescribed in the order granting license to sell the real estate. On August 22, 1881, Hoyt, as administrator with the will annexed *de bonis non*, filed a petition asking for an extension of the time to sell the real estate still unsold, and on that day an order was granted extending such time for one year from August 30, 1881. On May 8, 1882, Hoyt, as administrator, filed his report of sale of the real estate here in controversy, at private sale, to one Thomas B. Marrett for $1,400, to be paid and accounted for as set forth in a paper thereto attached, and asking that the sale be confirmed, and he authorized to execute to the purchaser a deed of conveyance upon his complying with the terms and conditions of sale. On the same day the court made an order confirming the sale, and directing a conveyance, whereupon Hoyt, as administrator with the will annexed *de bonis non*, executed the proper conveyance to Marrett, from whom defendant purchased in good faith.

The paper attached to the report of sale, showing how the $1,400 was to be paid and accounted for, was as follows: "The sum for which said property is sold, to wit, the sum of fourteen hundred dollars, is to be paid and applied in part-payment of said estate's indebtedness as allowed by this court, and further shown by that certain indenture of mortgage made by George Culver, John Farrington, Alfred Wharton, and Charles A. Morton, October 1, A. D. 1878, to the Farmers' & Mechanics' Bank of St. Paul, and recorded in the office of the register of deeds in and for the county of Ramsey and state of Minnesota, on the twelfth day of July, A. D. 1880, in Book 54 of Mortgages, pages 518–521. And the sum so applied and indorsed on said mortgage constitutes and is the consideration received for the

sale of said premises; said premises to be wholly and fully discharged from said mortgage obligation by the holder and owner thereof, as required by law."

The sale is claimed to be void for three reasons: *First,* because Hoyt, who made the sale, was not a legal administrator, and therefore could not have authority to sell, notwithstanding the license to sell and the order extending the time for sale; *second,* that the sale was made more than three years after the death of Culver, and that at the time of sale the lands, under Laws 1876, *c.* 37, § 37, were not subject to be sold for payment of debts; *third,* that the premises were not sold in the manner required by the order of license.

By the provisions of Gen. St. 1878, *c.* 57, § 51, as amended by Laws 1881, *c.* 43, § 4, a sale of real estate by an executor, administrator, or guardian, when contested by an heir or person claiming under the deceased, or the ward or any person claiming under him, shall not be avoided on account of any irregularities in the proceedings, provided it appears—"*First,* that the executor, administrator, or guardian was licensed to make the sale by the probate court having jurisdiction; * * * *fifth,* that the premises were sold in the manner required by the order of license, and the sale confirmed by the court, and that they are held by one who purchased them in good faith." We quote only so much of the section, as amended, as bears upon the objections here made.

It is claimed for the order of confirmation that it passes on matters antecedent to it, including the jurisdiction of the court, and all proceedings in the matter of selling the real estate up to the time of making the order. On this point we need only refer to *Dawson* v. *Helmes,* 30 Minn. 107, (14 N. W. Rep. 462,) in which we held that the order of confirmation is confined to and passes upon nothing else than the acts of the guardian (executor or administrator) in making and conducting the sale, and the sufficiency of the bid.

It is also claimed for the order of license that it passed on the jurisdiction of the court to make it, and on all matters necessary to justify it, including the fact that Hoyt was administrator, and that it is upon those points conclusive. There is very respectable authority for this in cases arising under the probate laws of other states. *Floren-*

*tine* v. *Barton*, 2 Wall. 210; *Cornett* v. *Williams*, 20 Wall. 226, 249; *Bostwick* v. *Skinner*, 80 Ill. 147; *Landford* v. *Dunklin*, 71 Ala. 594, 607. Whether those decisions are to be regarded or not, upon cases arising under the probate laws of this state, it certainly is not to be understood from them that the order of license is to be taken as establishing that the court had jurisdiction to make it, when the entire record shows it had not such jurisdiction, nor as establishing that the person named in it was administrator, when the entire record shows that he was not. In this case the probate court of Ramsey county was the proper one to probate the will. It is not denied that it did properly probate it. It was the proper court to apply to for the order of license. So far, therefore, as making an order for license is concerned, there is no question of jurisdiction. But the statute does not authorize any one but an executor or administrator to make the sale. He is the one appointed by statute to make it. The validity of the sale depends as well on the official character of the person making it as on the order of license. If made by any one but an executor or administrator, it is not an administrator's or executor's sale; and it is only to such that the provisions of section 51, which is a curative statute, apply. If, then, Hoyt was not administrator, the sale, although directed by the order of license, and subsequently confirmed by the court, was unauthorized and void. It has to be determined, then, was he administrator?

The decisions are not agreed on whether there may or may not be an administrator *de facto;* that is, one whose acts as administrator are binding in favor of persons dealing with him as such, by reason that he acts under color of an appointment, (though invalid,) and by reason that his acts and assumption of official character are acquiesced in by those who have the right and opportunity to object to his so acting. There is no great preponderance of authority either way. We must say we do not see any reason why there may be a *de facto* judge of the probate court that will not apply with equal force to the proposition that there may be a *de facto* administrator. And there is also a reason for it, (stated in *Davis* v. *Hudson,* cited *post*, in support of the proposition for upholding the proceedings of probate courts by the aid of such presumptions as apply to courts of superior jurisdiction,)

based on considerations of sound public policy and general utility, and growing out of the fact that the business of probate courts is not, and probably will not be, administered with strict regularity as respects forms and modes of procedure, and their proceedings fully and accurately entered of record, or their records preserved with the care which the importance of their business demands. While we do not pass distinctly on the point, (though it is made in the case,) we will say that, if there can be an administrator *de facto*, Hoyt was one; for, not only did the court assume to appoint him administrator, but, as appears upon the record, he was, in the subsequent proceedings, expressly recognized and treated as administrator by the court, by the rightful administrator, by the devisees of the estate, and, so far as appears, by everybody else.

We will consider the validity of the appointment; but, before doing so, we will refer to two decisions in this court, cited with great apparent confidence, one by plaintiff, and the other by defendant, as having an almost decisive bearing upon the issues here. That cited by defendant is *Davis* v. *Hudson*, 29 Minn. 27, (11 N. W. Rep. 136.) That case, however, did not decide that the validity of a decree of the probate court cannot be questioned, but only that the record imports unimpeachable verity. The opinion concedes (what is held by every court, and with respect to every judgment or decree) that the record may impeach itself, may show want of jurisdiction and the nullity of the decree, and that the question may always be raised upon the record. That Rugg was administrator when the court assumed to appoint Hoyt appears fully of record; so that if, as plaintiff claims, that fact prevented jurisdiction in the court to consider the matter of appointing another administrator, the record shows it, and the case is within what *Davis* v. *Hudson* concedes to be the rule.

The case cited by plaintiff is *Mousseau's Will*, 30 Minn. 202, (14 N. W. Rep. 887.) It is cited as sustaining the proposition that the probate court, by appointing Smith and Rugg, exhausted its jurisdiction to act in the matter of appointing administrators, and that it could not act in the matter again until its jurisdiction might again accrue by the office becoming vacant. In that case the will had been validly probated. A second application was made to probate it.

This court held that in the matter of probate the probate court was *functus officio* by the first probate, and that consequently it had no jurisdiction of the second application. The court was careful to put its decision on the ground that the second application was not one in a proceeding pending of which the court had jurisdiction, but was an attempt to institute a new, original, independent proceeding upon a matter in respect to which the court, having completely exercised its jurisdiction, was *functus officio*. The opinion says: "It is important to bear in mind that the proceedings upon the petition of Harrison and the guardian *ad litem* are not proceedings in a pending proceeding of which the probate court had jurisdiction; that is to say, they are not mere errors committed in the course of the exercise of a lawful jurisdiction.   *   *   *   The petitions were applications for new and original proceedings, which the probate court had no authority whatever to entertain." And this suggests the essential question upon this part of the case, to wit: Was the action of the probate court in appointing Hoyt a new, original, independent proceeding, in which case the fact that there was then a legal administrator in office capable of acting might go to the jurisdiction; or was it action taken in the course of proceedings then pending, and of which the court had jurisdiction, and therefore, if unauthorized, only error or irregularity, which, not being corrected by appeal, does not affect the validity of the appointment?

We think it was intended by Gen. St. 1878, *c.* 51, §§ 11, 13, that an administrator should not be appointed where there is already one whose authority has not been extinguished. The constitution, art. 6, § 7, provides that "there shall be established in each organized county in the state a probate court, which shall be a court of record, and be held at such times and places as may be prescribed by law. *   *   *   A probate court shall have jurisdiction over the estates of deceased persons and persons under guardianship." Though the legislature cannot take away nor diminish the jurisdiction thus conferred, it may regulate its exercise by prescribing modes of procedure to be followed by the court in exercising it, including the process or proceedings by which the jurisdiction shall attach to a particular estate. Acting clearly within this power to regulate, it has provided (Gen.

St. 1878, *c.* 49, § 2) that "the several probate courts have exclusive jurisdiction, in the first instance, in their respective counties, to take proof of wills, and to direct the administration of the estates of deceased persons;" specifying what particular cases may come within the jurisdiction of the probate court in each county. Section 3 specifies, as within the jurisdiction of the probate court, certain powers, among them these: "To take proof of a will;" "to grant and revoke letters testamentary and of administration;" "to direct and control the conduct and settle the accounts of executors and administrators;" "to enforce the payment of debts and legacies, and the distribution of the estates of intestates;" "to order the sale and dispose of the real property of deceased persons." These provisions are not to be taken as a grant of jurisdiction; that is fully vested by the constitution. Section 2 was designed to prevent conflict between the probate courts of the several counties, and to remove any doubt as to the probate court proper to apply to in any case; and section 3 can be understood only as intended to prescribe in what manner or by what means the constitutional jurisdiction of the court, when applied to, shall be exercised.

Estates are settled and administered by executors and administrators under the jurisdiction, supervision, and control of the probate court. So far as the statute has prescribed a mode of procedure, the court's supervision and control is to be exercised by doing, when necessary, the things therein prescribed. But the character of its jurisdiction is such that, when necessary to its proper and complete exercise, the court may do things not specified in the statute. The constitutional grant to it of jurisdiction over the estates of deceased persons is joined with that over persons under guardianship, and is of the same character. Though no such power is mentioned in the statute, yet this court decided in *State* v. *Ueland,* 30 Minn. 277, (15 N. W. Rep. 245,) that the probate court which appointed a guardian of the estate of an insane person may, by virtue of its general jurisdiction in such cases, make, or cause to be made, on behalf of such insane person, an election under the provisions of a will. The court said: "It was clearly the intention of the constitution to give the probate courts the entire and exclusive jurisdiction over the estates of

deceased persons and persons under guardianship, in the same manner and to the same extent that it gives to the district court jurisdiction over civil cases in law and equity arising out of other matters of contract or tort." That decision illustrates one difference between our probate courts and probate, surrogates', or ordinaries' courts in some of the states, where they are created by and derive all their jurisdiction and powers from statutes.

The jurisdiction given by the constitution is what is sometimes called general jurisdiction, or jurisdiction in the abstract, and may be termed capacity in the court to acquire jurisdiction over particular cases of the class mentioned. In order to the exercise of it in a particular case, it must be attached to it, or the particular case brought within it. The court must be called upon or invoked in the proper manner to exercise its jurisdiction in the particular case, over the particular estate. When that is done, the jurisdiction of the particular court attaches to the particular estate for the purpose contemplated by the constitution, to wit, for the purpose of supervising, directing, and controlling its administration and settlement according to law. By the proceedings for the probate of a will and its probate, or, in case there be no will, for the appointment, and the appointment, of an administrator, being the first step towards the administration and settlement of the estate, the constitutional jurisdiction of the court attaches to the estate. The jurisdiction given by the constitution is entire "over the estates," and where it has once attached it must continue (unless legally terminated) until its purpose is accomplished; that is, until the estate is administered and settled. Unless the administration of an estate is an entire proceeding, so that the jurisdiction of the court to direct and control it, once attaching, continues until its close, then it is or may be split up into an almost infinite number of subjects of jurisdiction, and the probate court, whenever it is necessary for it to take any action, must acquire jurisdiction to do the particular thing required of it, as though it were an original, independent proceeding. If the jurisdiction acquired by the proceedings for the probate of the will, or for the appointment of the first administrator, ceases with the probate or appointment, then the court cannot appoint commissioners or appraisers, nor extend the time for

creditors to present claims, nor require an administrator to renew his bond, nor direct him to pay debts, or sell personal property, or take possession of real estate, or commence an action, or render his accounts, nor do any of the scores of things that may be necessary for a probate court to do in the course of directing the administration of an estate, without acquiring anew jurisdiction to do the particular thing.

On the other hand, if the jurisdiction originally acquired continues beyond the probate or appointment, then there is no stopping place short of the close of the administration. And that it does so continue is, we think, not only in accordance with the intent and theory of the constitution, but is assumed to be so by the statute; that is, the administration of an estate is assumed to be one proceeding. Section 4, chapter 49, provides: "The jurisdiction acquired by any probate court over a matter or proceeding is exclusive of that of any other probate court, except when otherwise provided by law; and when a guardian is appointed, or any other proceeding is commenced, in the probate court of a particular county, all further proceedings in respect to the same shall be continued in that court." The administration of an estate is certainly within the meaning of the words "matter or proceeding" as here used. The difficulties that might arise, and the uncertainties that would (in many cases, at least) adhere to titles derived through the action of probate courts, if it be held that such courts must acquire jurisdiction anew for every successive step they may be called on to take in the course of the administration and settlement of an estate, must be apparent.

We hold, therefore, that when a probate court legally probates a will, or appoints a first administrator, it thereby acquires jurisdiction to direct and control the administration of the estate; and that such jurisdiction (unless previously legally terminated) continues over the administration, as one proceeding, until its close; and that all the court may do in the course and for the purpose of the administration, including the removal or discharge of administrators, and the appointment of new administrators, is sustained by the jurisdiction thus acquired. It follows that if the court should remove or discharge an administrator, in a case or for a cause not made by

statute a case or cause for removal or discharge, or if it should appoint a new administrator when the statute does not authorize it, the proper objection to the proceeding is not that there is want of jurisdiction, but that it is error or irregularity, and the remedy is by appeal.

In *Simpson* v. *Cook,* 24 Minn. 180, it was held that, as the probate court has jurisdiction to make such removal or discharge, its decree for that purpose cannot be questioned collaterally, and that the decree is valid in a collateral proceeding, though it recite that it is made upon grounds not made by statute cause for removal or discharge. That decision goes far towards deciding the point we are considering.

The appointment of Hoyt, though erroneous, was not void.

As to the second objection made to the sale. Laws 1876, *c.* 37, § 3, as construed by this court, limited the time for selling the real estate of deceased persons, for payment of debts generally, to three years after the death. As the statute then stood, (Gen. St. 1866, *c.* 57, § 34,) a sale by an executor or administrator might be made within one year after the making of the order for it, or within such further time, not exceeding one year, as might be allowed by the judge of probate. The two statutes were consistent, for the order for sale might be made within one year after the death. In any case, where both could not be operative, the later statute would of course prevail. But Laws 1879, *c.* 18, amended section 34 so as to authorize the sale to be made within one year after the making of the order, or within such further time, not exceeding two years, as might be allowed by the judge of probate. As some time must in all cases elapse between the death and the making of the order, this amendment authorizes a sale to be made more than three years after the death. It is inconsistent with the act of 1876. The two cannot stand together; consequently the later act operates as a repeal of the earlier.

Under the third objection to the sale, two points are made: *First.* That there was no valid extension of time to sell, because the order was not indorsed on the certified copy of the license. Gen. St. 1866, *c.* 57, § 34, as amended by Laws 1879, *c.* 18, provides that after the order of sale is made, and the bond is filed, the judge of probate shall deliver a certified copy of the order to the executor, administrator, or

guardian, who shall thereupon be authorized to sell the real estate as therein described, within one year after the making of such order, or within such further time, not exceeding two years, "as may be allowed by said judge of probate, by an order entered of record, and indorsed upon such certified copy of the original order, *to that effect,* dated and signed by him." The possession by the executor, etc., of the copy order, is for evidence of the authority to sell, but it does not constitute such authority. That is in the order of the court entered in its records. Whether there would be any irregularity in selling without having the certified copy order need not be considered. Even if it were conceded that the delivery of the certified copy order of sale were essential to the authority to sell, the indorsement of the extension of time upon it was not. The statute does not require the order extending the time to be indorsed *verbatim* on the copy, but only that the indorsement shall be "*to that effect;*" in other words, that a minute or memorandum of the order shall be indorsed. The purpose of that was clearly for the guidance of the executor, etc., and possibly for information of purchasers. Its omission would not affect the authority to sell within the extended time, for that is in the order extending the time; though the circumstances might be such as to make it a reason for not confirming the sale.

*Second.* The license required the premises to be sold for cash, subject to incumbrances, and the sale was not so made. The facts appear to be that Culver and three others had executed several notes to the Farmers' & Mechanics' Bank of St. Paul, amounting to $26,000, and secured the same by a mortgage upon the real estate here involved and other real estate, and the debt had been proved for one-fourth of it as a debt against Culver's estate. The terms of sale appear to have been that the purchaser would pay the consideration upon that debt, and secure a release of the premises from the mortgage, and this appears to have been done. At the time the order of sale was made, the statute (Gen. St. 1878, *c.* 57, § 18,) required such sales to be subject to all charges on the real estate, by mortgage or otherwise, existing at the time of the death, and provided that in case the estate was in any way liable for the amount secured by the mortgage, or for any such charge, the sale should not be confirmed until

the purchaser should execute a bond to pay such mortgage or charge. After the order of sale was made, but before the sale, this section was amended by Laws 1881, c. 43, by adding to it, allowing a confirmation of the sale if the land should be "first released, discharged, and made clear from such incumbrance or charge, by the owner or holder thereof, upon the payment to him of the proceeds of the sale, or so much thereof as may be necessary to satisfy such incumbrance or charge;" and also by adding "or the executor or administrator may sell the whole, or any part, subdivision, or portion, of the interest and estate of the deceased in any lot or tract of land charged with any lien or incumbrance, and, upon the release of the lot, tract, or part so sold from such lien or incumbrance, apply the proceeds of such sale or sales towards the payment of such charge, lien, or incumbrance until the same is fully paid; and the executor or administrator shall account for any balance," etc.   This, in effect, allows the executor or administrator to sell the real estate free of the incumbrance, if the sum bid is sufficient to pay it off, and to agree to apply, and to apply, the proceeds of sale, or so much thereof as may be necessary, to free the land from it.   That was what was done in this case, except that instead of the purchaser paying the price to the administrator, and the administrator paying it to the holder of the notes and mortgage, the purchaser agreed to and did pay it directly to the creditor.   It was a substantial compliance with the statute, and effected the result intended by it.   It relieved the estate of that much indebtedness.

It is true the order of license directed the sale to be made subject to all liens, taxes, and incumbrances; but, so far as concerned incumbrances existing at the time of the death, the statute, and not the order, regulated the power and duty of the administrator in making the sale.   The change in the statute changed the power of the administrator notwithstanding the order.

Order reversed.