STATE OF MINNESOTA, *ex rel.* Charles F. Dana, *vs.* PROBATE COURT OF RAMSEY COUNTY. .

March 20, 1889.

**Probate Court — Decree Closing Administration, on Application of One of Two Adm'rs.**—Where, upon an application for the final settlement of his accounts by one of the administrators of an estate, (two having qualified,) and for a final discharge, the probate court, having jurisdiction to hear such application, made an order allowing the account, and discharging the administrator, *held* a final order discharging the administration of the estate, and valid until set aside in the same proceeding, though the other administrator, who had left the state and ceased to act, had not been removed, and did not join in the application. The omission was an irregularity merely.

**Same — Effect of Decree on Creditors.**—A final decree discharging the administration operates to discharge the lien of creditors upon real estate which might have been previously sold to pay debts.

**Same — Sale of Real Estate to Pay Debts — Application, when to be Made.**—An application for license to sell real estate for the payment of debts in the course of administration must be made within a reasonable time after the allowance of the claims of creditors.

**Same—Application after Ten Years.**—Such application, made after the lapse of 10 years, the limit of ordinary judgment liens, *held* properly refused.

On March 7, 1882, the relator, Charles F. Dana, filed a petition in the probate court of Ramsey county, praying for the removal of the administrators (appointed February 8, 1862) of the estate of Michael E. Ames, who died intestate in that county January 4, 1862, and for the appointment of an administrator *de bonis non.* The petition alleged that the relator had become the owner of two of the claims allowed by the commissioners, on August 19, 1862, against the estate; that the intestate died seized of certain described real estate in Ramsey and Mille Lacs counties, and that the administrators had become non-residents. Pursuant to this petition, and after notice and hearing, the former administrators were removed, and relator was appointed and qualified as administrator *de bonis non.* No personal

property of the estate came into his hands, and on May 24, 1882, he filed an inventory of the lands of the estate in the two counties, and appraisers were appointed, who made report of their value. No time was limited for the administrator *de bonis non* to dispose of the estate and pay the debts, and he has sold none of the real estate. On May 19, 1888, he filed his petition for license to sell all the lands of the estate to pay the debts. At the hearing the application was opposed by Dean Dudley, guardian of Michael E. Ames, an insane person and the son of the intestate. On July 21, 1888, the probate court refused to grant the license, to review which order the relator obtained from this court a writ of *certiorari*. The earlier proceedings in the administration of the estate are stated in the opinion.

*John B. & W. H. Sanborn,* for relator.

*Wenzell & Tiffany,* for respondent.

VANDERBURGH, J. On the 8th day of February, 1862, Fleet F. Stother and Josephine Ames were duly appointed administrators of the estate of Michael E. Ames, deceased. An inventory, consisting of personal property only, was filed March 1st following. May 7, 1862, an order was made by the probate court, allowing the administrators one and one-half years from the issuing of letters of administration in which to dispose of the estate and pay the debts of the deceased. August 19, 1862, the report of the commissioners was filed, allowing claims against the estate, including those represented by the relator and set forth in his petition in this proceeding, and representing that they had given notice of their appointment and the limitation of time to present claims, which report was allowed and filed on the same day. November 1, 1862, on the application of a creditor, praying "that the debts of deceased be paid, and such dividend made and distributed as the funds in the hands of the administrators will permit," an order of distribution was made. On the 6th of August, 1863, Fleet F. Stother, one of the administrators, filed his verified petition, reciting the appointment of commissioners and appraisers, and referring to their reports on file, and stating "that Josephine Ames, wife of the deceased, and one of the administrators, had become a non-resident of the state of Minnesota, and that he was prepared to render a final account of the administration, and pray-

ing for an order to issue, directed to all persons interested in the estate, requiring them to appear on a day certain, to be therein specified, and attend the final settlement of his account as administrator, and that he be discharged from such administration, and that the court make its final order in said estate." The court in pursuance thereof issued its order, fixing the 28th day of August, 1863, for the hearing of the petition, and requiring all persons interested to appear at the session of the court then to be holden, and show cause why the prayer of the petitioner should not be granted, and also directing the proper notice by publication to be given. The record also shows that thereafter, on the day named, viz., August 28th, upon due proof of publication of notice, the matter of the account was considered, the same being duly presented and verified, and the court made its order granting the petition, which recites that "the said administrator having presented his account showing that he received from sale of property of said estate $1,472.95, and that he has paid out and distributed, as the law requires, on account of said estate, $1,355.50, the balance, $117.45, being allowed the administrator for his fees and services in said estate: After an examination and hearing upon said account, the court being satisfied that the same is just and correct and should be allowed, it is ordered and adjudged that the said administrator's account in the matter of said estate be and the same is hereby allowed, and the administrator discharged."

It is admitted that all the property disclosed by the inventory was accounted for, and no question is raised as to the fact or sufficiency of the notice of the application for the final order, and the court had jurisdiction in the premises. It is true that one of the administrators did not join in the application, and had not been removed. But we think this was error or irregularity merely. *Culver* v. *Hardenbergh*, 37 Minn. 225, 235, 236, (33 N. W. Rep. 792.) She had removed from the state, and had ceased to act. The acting administrator had full charge of the administration, and rendered full account thereof. The creditors, including the assignors of the relator, were parties to the proceedings, and presumptively had actual notice thereof, and they were at liberty to appear and object to the granting of the order; and doubtless, if the attention of the court had been di-

rected to the fact that there was real property of the deceased subject
to be sold to satisfy his debts, opportunity would have been given for
proceedings for that purpose.   The object of the application on the part
of the acting administrator was to submit his final account and close
the administration.   The order made was evidently so intended, and
must be construed as a final order discharging the administration
of the estate.   The parties had their remedy by appeal, but the or-
der could not be attacked collaterally or treated as void, so as to war-
rant subsequent proceedings to reach the real estate as if the admin-
istration was still in progress and the estate still unsettled.

The omission of the land from the inventory, and the subsequent
discovery of the real estate of the deceased which was not reduced to
assets by the administrator or distributed to the heirs, do not oper-
ate to revive the administration and open the judgment, or warrant
further proceedings.   The land descended to the heirs, subject to
the claims of administration upon it.   The effect of a decree assign-
ing the real estate to the heirs is simply to discharge it from the ad-
ministration, and, of course, the final discharge of the administration
must discharge the lien of the creditors.

2.  The petition for the appointment of the relator as administrator
*de bonis non* was filed more than 20 years after issuance of the orig-
inal letters of administration.   In the mean time no action had been
taken by the creditors or any one in their behalf to reach the real es-
tate of the deceased, and there were no other assets.   Conceding that
the administration had not been finally closed, we think the applica-
tion for license to sell was too late.   It is clearly the policy of the
law to require applications for license to sell real estate, to pay debts
in the course of the administration, to be made without unreason-
able delay after the necessity or propriety of such application is made
apparent.   This is evident from the short statutory limitation pro-
vided for the allowance of claims, (other than contingent,) and the
provisions for limiting the time for the settlement of estates.   *Mooers*
v. *White*, 6 John. Ch. 360, 378–388.   The real estate of the deceased
debtor is accessible, and there is no reason why creditors and ad-
ministrators should not proceed promptly and with due diligence.
The rule is necessary for the security of titles and the protection of

*bona fide* purchasers. Each case must, however, depend largely upon its own circumstances, and in some instances, as in the case of executors, the terms of the will or condition of the estate may contemplate or require delay. *Church* v. *Holcomb*, 45 Mich. 29, (7 N. W. Rep. 167.) The allowance of the claims of creditors by the commissioners has the effect of a judgment, and, if not appealed from, is conclusively binding upon all parties interested in the estate. *State* v. *Ramsey Co. Probate Court*, 25 Minn. 22. And while there does not appear to be any express statutory limitation upon the power of the probate court to license the sale of real estate to pay debts at any time during the pendency of the administration, *(Culver* v. *Hardenbergh*, 37 Minn. 225, 236, 33 N. W. Rep. 792; Gen. St. 1878, c. 53, § 34,) yet, unless clear and satisfactory reasons appear, such an application should not be granted after long delay, and, in analogy to the case of other judgment liens, the liens of creditors should not be enforced after the expiration of 10 years. An order granting the petition, at any time before the final settlement of the estate, doubtless would not be held void for want of jurisdiction or subject to be attacked collaterally, on account of the delay in making the application. *Platt* v. *Houghtaling*, 45 Mich. 457, 460, (8 N. W. Rep. 72.) But it would be subject to be reviewed on appeal, and to be reversed for an abuse of discretion. In any event, the appellate court would not interfere with the action of the probate court in refusing to license a sale of real estate after an unreasonable delay on the part of the creditors and administrator, though less than 10 years had elapsed. *Mooers* v. *White*, 6 John. Ch. 360, 388; *Ricard* v. *Williams*, 7 Wheat. 59, 119; *Ex parte Allen*, 15 Mass. 58, 61; *Slocum* v. *English*, 62 N. Y. 494; *McKean* v. *Vick*, 108 Ill. 373; *Gore* v. *Brazier*, 3 Mass. 523, 542, (3 Am. Dec. 182;) *Liddel* v. *McVickar*, 11 N. J. Law, 44.

Order affirmed.