## HIRAM BERKEY vs. ST. PAUL NAT. BANK et al.

Submitted on brief by appellant, argued by respondent, June 20, 1893. Affirmed Aug. 21, 1893.

**Laches as an Equitable Defense.**

In an equitable action by a judgment creditor of the estate of a deceased person to subject real property formerly belonging to the estate to the satisfaction of his judgment, *held*, that the plaintiff should be denied such relief on the ground of his laches, the action not being instituted until about seven years after a final adjudication which determined the plaintiff's rights as against the estate, and the obligation of the executors to pay the debt; such delay not being justified, and the lands now sought to be charged having been conveyed by the executors, and under mesne conveyances having been purchased by the defendants, strangers to the estate, and parts of such lands having been improved by them.

**Same—Neglect to Enforce a Judgment.**

The continued neglect of the plaintiff to enforce against the executors and their bondsman a judgment recovered against them for their neglect or misconduct in respect to the payment of the plaintiff's debt, is an additional reason for refusing the relief sought against these defendants.

Appeal by plaintiff, Hiram Berkey, from a judgment of the District Court of Washington County, *F. M. Crosby*, J., entered September 8, 1892, that he take nothing by this action.

In 1858 George B. Judd, Orange Walker, Albert H. Judd, Asa H. Parker and the plaintiff, Hiram Berkey, were partners in logging and lumber business under the name of Judd, Walker & Co., at Marine on the St. Croix. George B. Judd lived at St. Louis, Mo. He and one Leeds sold their lumber in that market. Walker managed the general store at Marine. Parker looked after the logging business. Berkey had charge of the sawmill. Albert H. Judd

lived in Illinois and took no active part in the business. On September 24, 1858, Berkey sold his one-ninth interest to the two Judds and Walker. He received therefor property valued at $17,730.90. Parker also sold his interest, and thereafter the Judds and Walker continued the business under the old firm name, and assumed and paid all the old firm liabilities. Albert H. Judd died in 1865, leaving George B. Judd and Orange Walker sole surviving members of the firm. In 1867 Berkey brought suit against them to set aside for mistake and fraud the sale he made of his ninth interest in the old firm, and asked for an accounting and damages. At the trial all the issues were submitted to a jury, and Berkey had a verdict. This, on appeal, was set aside, and a new trial ordered. *Berkey* v. *Judd*, 14 Minn. 394, (Gil. 300.) The second trial was before Hon. C. K. Davis, referee, who reported for Berkey, and ordered judgment for $10,032.10 and interest. A motion was made for a new trial and denied. The denial was affirmed in this court. *Berkey* v. *Judd*, 22 Minn. 287. Judgment was entered on the report January 7, 1876, for $13,813.36. Meantime, after the report and before the appeal, George B. Judd died, testate, leaving a widow and four children. Walker paid one-half of the judgment and was released. Laws 1867, ch. 78, (1878 G. S. ch. 66, §§ 37–40.) Judd's will was proved in the Probate Court of Washington County July 3, 1872, and on the same day letters testamentary were issued to Mary Ann M. Judd, James R. M. Gaskill and Ariel Eldridge, and they accepted the trust. Commissioners to adjust claims against the estate were appointed according to the then existing practice in the Probate Court. This claim of Berkey was not presented to them, nor were the executors substituted in Judd's place in the action. They filed their report in February, 1873, and it was accepted and they were discharged. In January, 1876, a certified transcript of the judgment was filed in the Probate Court. The estate was solvent and had a surplus of over $30,000 after paying all claims presented and proved. In July, 1876, Berkey moved in the Probate Court that the executors be ordered to pay the balance of the judgment. This was refused, but, on appeal to the District Court, this was reversed and the order granted. On appeal to this court the order was affirmed March 31, 1881. *Berkey* v.

*Judd*, 27 Minn. 475. The action was remitted to the District Court, and on February 7, 1882, judgment was entered, and a copy certified to the Probate Court, and demand of payment made upon the executors. They refused and Berkey obtained leave and brought suit on their bond. The defendants demurred, but were overruled; and, on their appeal, the order was affirmed here. *Berkey* v. *Judd*, 31 Minn. 271. That action was then tried on the merits and Berkey had findings and order for judgment against the obligors. They moved for a new trial, were denied and D. M. Sabin, one of the sureties, appealed, but the order was affirmed, (*Berkey* v. *Judd*, 34 Minn. 393,) and judgment was entered January 6, 1885, for $10,-772.68. Gaskill paid $3,500 on the judgment and was released April 30, 1887, but the remaining judgment debtors were alleged to be insolvent and to have so continued. The residue of this judgment has not been collected. At his death, George B. Judd was seised and possessed of an undivided half interest in a large amount of land and town lots in and around Marine. On January 27, 1887, the executors, without an order or direction of the Probate Court, conveyed the real estate to the devisees named in Judd's will. No decree of final distribution of Judd's estate has been made. These grantees sold and conveyed parts and portions of this real estate to numerous purchasers. Berkey commenced this action in June, 1891, against all the grantees of these lands and lots, asking judgment that his judgment last above mentioned is a lien on the property, and that it be sold to pay the debt, and that he have such further relief as should seem equitable. The defendants exceeded eighty in number. Some of them answered. At the trial on March 1, 1892, the court made findings of these facts and judgment was entered for defendants. Plaintiff appeals.

*H. J. Horn* and *Searles & Gail*, for appellant.

The property is subject to the lien of Berkey's judgment, and may be resorted to, to pay the same. 1878 G. S. ch. 43, §§ 12, 15, made all the property belonging to the estate subject to the payment of this as well as other debts, and under 1878 G. S. ch. 47, § 27, they are to be paid out of the estate, according to the terms of the will. Until a decree of distribution by the Probate Court which closes the estate the property is liable in the course

of administration to the payment of this claim. *State ex rel.* v. *Ramsey Co. Probate Ct.*, 25 Minn. 22; *Dawson* v. *Girard Life Ins., A. & T. Co.*, 27 Minn. 411; *Hyde* v. *Tanner*, 1 Barb. 75.

It may be that a court of equity should not go further in this case than to declare whether or not this real property is subject to be resorted to for the payment of this debt, remitting further proceedings to the Probate Court. There the question of whether there is personal property in the hands of the executors, or otherwise available, sufficient to pay this claim might be determined, but before any steps can be taken there, there must be a decree here.

*Clapp & Macartney*, for respondents.

The doctrine of laches as a reason for the denial of the remedy, applies peculiarly to equitable rights and equitable remedies, and in cases where there is no statute of limitation, and there probably is none in this case, and a resort is had to a court of equity, the court refuses to exercise its equitable jurisdiction if it appears that the plaintiff has been guilty of laches; and while no period can be said to be absolutely fixed, as the length of time which must elapse in a given case in order to find a party guilty of laches, the courts by analogy very frequently apply the rule of the statute of limitation of actions. *State ex rel.* v. *Probate Court of Ramsey Co.*, 40 Minn. 296; *O'Mulcahey* v. *Gragg*, 45 Minn. 112; *Hill* v. *Nichols*, 47 Minn. 382.

DICKINSON, J.   In an action in the District Court instituted by this plaintiff against George B. Judd and Orange Walker judgment was finally rendered in January, 1876, in favor of the plaintiff for the sum of $13,813.36.   Prior thereto Judd had died, and his widow, this defendant Mary Ann M. Judd, and the defendants James R. M. Gaskill and Ariel Eldridge, became the qualified executors of his estate.   Walker paid one-half of the judgment, and the plaintiff satisfied the same to that extent, discharging Walker from further liability.   It is not claimed that the judgment did not remain enforceable, as to the balance, against the estate of Judd. In the same month,—January, 1876,—a certified transcript of the judgment was filed in the probate court, and payment demanded

of the executors, but refused, although all other debts of the estate, and the expenses of administration, had been then paid, and there remained, as assets of the estate, and available for the payment of this judgment, over $30,000 in real and personal property. In July, 1876, in proceedings in the probate court to require the executors to pay the judgment, that court sustained the contention of the executors that the plaintiff's claim had become barred, because it had not been presented to the commissioners appointed by that court to receive and pass upon claims against the estate. This plaintiff appealed to the district court, where that determination of the probate court was reversed. The executors then appealed to this court. The decision of the district court was affirmed in this court,—*Berkey* v. *Judd,* 27 Minn. 475, (8 N. W. Rep. 383,)—and in May, 1881, it was thereupon finally adjudged in the district court that the order of the probate court be reversed, and that the executors be required to pay the plaintiff's judgment. The judgment of the district court to that effect was certified to the probate court in February, 1882, and in June of that year a copy of it was served on the executors, and payment demanded and refused.

While the foregoing proceedings were pending, and in January, 1877, the executors, without authority of the probate court, conveyed certain of the real estate to George F. Judd, (a son of the testator, and one of the residuary devisees and legatees under the will,) taking his note for $10,575 therefor, without other consideration. A year thereafter they conveyed other portions of the real estate to John J. Sabin and Frederick H. Sabin, two sons of a daughter of the testator, for no other consideration than the promissory note of their mother for $1,600. This, too, was without authority from the probate court. These notes were never collected by the executors, but the amounts thereof were charged to the makers in a final settlement by the executors with them, as parts of their distributive shares under the will. The executors, also, in January, 1878, conveyed certain real estate to Orange Walker, in consideration of conveyances of other lands by Walker to said John J. Sabin and Frederick H. Sabin, the honest purpose of the transaction being thus to effect a partition of lands owned by the estate and by Walker as tenants in common. The real estate thus

conveyed by the executors to George F. Judd and to Walker has been since conveyed by such grantees, and by mesne conveyances has been transferred to. these defendants; and upon part of the same valuable improvements have been made. These are the lands involved in this action, and which the plaintiff seeks to subject to the payment of his demand against the estate. The defendants purchasing such lands had constructive notice of the facts. The other lands so conveyed by the executors are still held by their grantees.

No order was ever made by the probate court for the payment or distribution of the estate to or among the beneficiaries under the will, but all of the property, both real and personal, was thus distributed by the executors. The amount of the personal estate so distributed exceeded the claim of the plaintiff upon which this action is founded.

In January, 1885, the plaintiff, in an action to recover for the same indebtedness upon which this action is founded, recovered a judgment against the executors (excepting Mrs. Judd) and against one D. M. Sabin, a surety on their bond, for more than $10,000. The summons was not served upon Mrs. Judd, (an executrix,) nor was any attempt made to subject her property to the payment of this claim. One of the executors against whom that judgment was recovered paid $3,500, and the plaintiff satisfied the same to the extent of one-half thereof. No execution was ever issued on that judgment, nor its enforcement attempted, prior to the commencement of this action. The plaintiff alleged the insolvency of the judgment debtors, but the court finds that this was not proved, which is equivalent to a finding of fact against the plaintiff upon that point. The presumption, in the absence of proof, is that they are solvent.

This action was not commenced before the 23d of March, 1888. Confessedly this action is not founded on the statute declaring the liability of next of kin, legatees, heirs, and devisees to creditors of the estate. 1878 G. S. ch. 77. The brief of the appellant creates some doubt as to what precise relief he seeks by this action; but the ground upon which the decision of this appeal will rest is such that this is not very material, and we may regard the purpose of the action to be such as is indicated in the prayer of the com-

plaint,—that is, that the court shall exercise its jurisdiction as a court of equity to subject to the payment of the plaintiff's claim against the estate the real property which through the conveyances by the executors to George B. Judd and Orange Walker, and through mesne conveyances from the latter, have been transferred to the respondents, strangers to the estate.

The equitable doctrine of laches forbids the granting of such relief. It will be seen that when this action was commenced nearly seven years had elapsed after the entry of the judgment in the district court finally determining the plaintiff's rights as against the estate, and the obligation of the executors to pay the claim. The remedy now invoked was as available to the plaintiff at that time as it was seven years afterwards, when he resorted to this action. The conveyances complained of had been made by the executors three and four years, respectively, before that final judgment in the district court; and, although the executors refused to pay the demand, and had disposed of all the assets of the estate, the plaintiff allowed seven years further to pass before instituting this action. The relief now sought, as respects these respondents, is, in effect, against persons who were never personally responsible to the plaintiff, and who are not chargeable with any misconduct. It is sought, after an unexcused delay of many years, to subject the lands which they have purchased, and to a large extent improved, to the satisfaction of the obligations of those from whom or through whom whatever title they now have has been acquired. The plaintiff does not present such a justification of his conduct as should satisfy the conscience of a court of equity, when, having delayed so many years to resort to the property conveyed by the executors more than ten years prior to the commencement of this action, he now seeks that relief as against remote purchasers of the property. After so long a delay a court of equity should refuse to aid the plaintiff as against such purchasers, even though they were chargeable with constructive notice of the facts relied upon by the plaintiff in derogation of their title. *O'Mulcahey* v. *Gragg,* 45 Minn. 112, (47 N. W. Rep. 543;) *State* v. *Probate Court of Ramsey County,* 40 Minn. 296, (41 N. W. Rep. 1033;) *Hill* v. *Nichols,* 47 Minn. 382, (50 N. W. Rep. 367.)

The case of the plaintiff appears in no better light when we con-

sider his conduct in connection with the action against the executors and their surety, in which he recovered judgment in January, 1885. The enforcement of that judgment would have satisfied the claim upon which this action is founded. That judgment was recovered upon the theory that the executors had been guilty of misconduct,—a breach of trust,—for which they became · personally responsible. They, rather than remote purchasers of the property, ought to be made to respond for their misconduct. But the plaintiff neglected for more than three years to attempt to enforce that judgment, choosing instead to seek, after that lapse of time, to satisfy his claim by resorting to the remedy here invoked against these respondents. The plaintiff is not only chargeable with laches which should forbid relief being granted in this action, but'he apparently had an adequate available remedy by enforcing his judgment against .the executors and their surety. This is an additional reason justifying the denial of relief in this suit.

Judgment affirmed.

(Opinion published 56 N. W. Rep. 53.)

