## PORTER LAND & WATER CO. *v.* BASKIN.

*(Circuit Court, S. D. California.* August 8, 1890.)

WRITS—SERVICE BY PUBLICATION.
   In a suit to establish a trust in real estate, service may be had on a non-resident, though the bill also prays for an accounting and for other relief.

In Equity. On motion to dismiss.
*Graves, O'Melveny & Shankland,* for complainant.
*Anderson, Fitzgerald & Anderson,* for defendant.

Ross, J. This action was commenced in one of the superior courts of the state on the 7th of February, 1889. Among other things, the complaint alleges, in substance, that during the times therein mentioned the plaintiff was and still is a corporation duly organized and existing under the laws of the state of California, for the purpose, among other purposes, of buying, selling, and otherwise disposing of lands, waters, and water-rights; and that from the time of its organization until May 2, 1888, the defendant was one of its directors. That on the 29th of June, 1887, defendant, while such director, entered into a contract with plaintiff by which defendant was constituted sole agent of the corporation plaintiff for the selling of its lands, with his compensation fixed at $100 per month, and 6 per cent. commissions on all sales, which compensation, the complaint alleges, "was an exorbitant, unjust, and unconscionable sum." It alleges that many sales of the lands of the corporation made under the agreement mentioned were made upon credit, without any payment being made to the corporation; that many sales were never completed, from which no consideration was realized by it, and were afterwards canceled or "treated as null and void," yet on all these transactions defendant charged against the corporation, and was allowed, commissions to the maximum extent provided for by the contract under which he acted. "That, in the capacity of agent, as aforesaid, and dis-

regarding his duties as director, and with a view solely to his personal profit, said defendant effected pretended sales to many persons, without any money coming therefrom to the treasury of the corporation, but upon which he charged his full commissions, and caused credit to be given himself therefor upon the books of said corporation." That, in this way, during a period of less than 10 months, defendant received from the corporation plaintiff, in pretended payment of his services, under the contract mentioned, the sum of $15,727.71 in cash; "also a promissory note executed by said corporation, dated April 19, 1888, payable in ninety days, bearing interest at the rate of ten per cent. per annum, upon which there remains unpaid $4,379.50, with interest; also the further sum of $2,000," which it is alleged accrued to the defendant in this wise: A certain tract of plaintiff's land was sold by defendant to one Byran for $2,000. No money was in fact paid by Byran to the corporation; nevertheless defendant caused the corporation to be credited upon its books with $2,000 on account of the sale, and himself to be charged with the same amount, and took from Byran to himself an assignment of a mortgage executed by one Charlotte E. Smith to Byran on August 20, 1887, on a certain lot of land in Los Angeles city. to secure the payment of two promissory notes, each for the sum of $1,000, one payable one year, and the other two years, after date. That on the 19th of April, 1888, and while defendant was a director of the corporation plaintiff, he procured the corporation to transfer and hypothecate to him, as security for the payment of the aforesaid note of the corporation, certain notes of third parties, specifically described in the complaint, all of which, it is alleged, were secured by mortgages recorded in the office of the recorder of Los Angeles county. That defendant, while a director of the corporation plaintiff, bought from the corporation certain described lots of land and water, situated in Los Angeles county, deeds for which he caused to be executed by the corporation to his wife, Mary G. Baskin, who paid no consideration therefor, and who received the title merely for the accommodation and to the use and benefit of the defendant, and thereafter transferred the same to him. The complaint alleges that the services rendered by defendant to the corporation plaintiff, beyond his duties as director, were reasonably worth $100 per month, which plaintiff offers to pay, together with any sum defendant may have expended on plaintiff's account; but beyond that it is alleged that the charges and commissions made and received by defendant were false, simulated, and fictitious. The prayer is that the agreement made by plaintiff and defendant be annulled; that defendant be adjudged to be a trustee for the plaintiff of all moneys, promissory notes, choses in action, and real property, including the real property transferred by plaintiff to defendant's wife, and by her to defendant, and that he be adjudged to convey the same to plaintiff, or, if such transfer cannot be made, that he be charged with the value thereof; that an injunction be issued to restrain defendant from transferring any of the said property, or collecting or disposing of it; that the promissory note executed by plaintiff to defendant be canceled, and the securities hypothecated to secure the same be directed to

be retransferred to plaintiff; that an accounting be had between the plaintiff and defendant, and plaintiff be given judgment against defendant for such sum as it may be justly entitled to, and for such other and further relief as in equity it ought to have.

The defendant being, at the time of the bringing of the suit, a resident of the state of Kentucky, the plaintiff caused summons to be served upon him by publication, pursuant to that provision of the Code of Civil Procedure of California providing for such service in cases where the person on whom it is to be made resides out of the state. On the 8th of October, 1889, the defendant appeared in the state court for the special and only purpose of moving the court to set aside the attempted service of summons, on the ground that the action is one *in personam,* and, the defendant being a non-resident of the state, service by publication is void. The motion was overruled by the state court, to which action the defendant excepted, and tendered his bill of exceptions, which was settled. Thereupon the cause was, on defendant's motion, removed to this court, and here the defendant, disclaiming any general or voluntary appearance, moves the court to dismiss the suit upon the same grounds urged by him in the state court for the quashing of the service of summons. His special appearance in the state court for the purpose of calling attention to the alleged illegality of the service was in no respect a waiver of such illegality, if it in fact existed. *Harkness* v. *Hyde,* 98 U. S. 479; *Powers* v. *Braly,* 75 Cal. 238, 17 Pac. Rep. 197. It is, however, contended for the plaintiff that, defendant having submitted to the state court the question of the validity of the service upon him, and that court having held it valid, the case comes here with that adjudication in force, and that it must therefore be here considered that the state court acquired jurisdiction of the defendant by the service in question, and therefore this court will take jurisdiction, even though it would not have acquired such jurisdiction had the case been commenced here. In none of the cases referred to by counsel do I find that the precise point now made was decided. In *Brooks* v. *Farwell,* 4 Fed. Rep. 166, relied on by the plaintiff, the state court having ruled in effect that the facts set up by the defendant to defeat the service of summons could, under the Code of the state, be pleaded by answer, the circuit court held that it must accept as correct and conclusive the ruling of the state court in respect to the proper practice under the state statutes, and, in accordance with that ruling, that the plea must be received in the circuit court. The cause was doubtless an action at law, in which the rules of practice in the state court would prevail in the circuit court. In *Loomis* v. *Carrington,* 18 Fed. Rep. 98, also relied upon by the plaintiff, it was held that in cases removed from a state court the circuit court will not review an order made prior to the removal, if the state court acted within its jurisdiction, but will take the case precisely as it finds it, accepting all prior decrees and orders as adjudications in the cause. In *Duncan* v. *Gegan,* 101 U. S. 810, the supreme court said that "the circuit court, when a transfer is effected, takes the case in the condition it was when the state court was deprived of its

jurisdiction. The circuit court has no more power over what was done before the removal than the state court would have had if the suit had remained there. It takes the case up where the state court left it off." This language had reference to a condition in which the case had been placed by the positive decree of the state court. In *Wertheim* v. *Trust Co.*, 11 Fed. Rep. 689, Judge SHIPMAN held that where one of the parties had, by his non-action within the time prescribed by the state court, prevented himself from asserting a defense or an objection to the jurisdiction of the court, and thereafter in that court such defense or objection could not be considered as existing, the circuit court takes the case in the condition in which the non-action of the party.left it, and accordingly refused to permit the defendant to plead in abatement in the circuit court the defective service of the complaint, on the ground that he had, prior to the removal, lost by his inaction the right to object to such defective service in the state court. In *Kauffman* v. *Kennedy*, 25 Fed. Rep. 785, before the removal of the cause from the state to the federal court, defendant appeared specially; and moved the court to quash the service of summons on the ground that service was obtained on defendant while he was attending as a witness in the state in a criminal prosecution against the plaintiff, defendant at the time being a resident of another state. The case having been subsequently removed to the federal court, the motion was insisted upon, and by the court granted. The motion does not appear to have been ruled upon by the state court, in which respect it differs from the case at bar. In a number of cases cited by defendant it has been held that the filing of the petition and bond for removal of the cause from the state to the federal court was not such an appearance as waived the question of jurisdiction, and precluded the defendant from moving in the federal court to quash the service of process. In *Atchison* v. *Morris*, 11 Fed. Rep. 582, Judge DRUMMOND, in deciding the point there made that defendant, by making the motion and giving the bond for the removal of the case, made such an appearance as admitted the sufficiency of the service upon him, and that he could not thereafter in the federal court move to set aside the service of summons, said:

"There was, in fact, no appearance entered in the state court, unless the filing of a petition and the giving a bond constituted ·an appearance; but I think it was not, in any event, such an appearance as to deprive the defendant of the right to make objections in this court to the service of summons. In fact, it may have been, among other reasons, for the very purpose of objecting to the service of summons that defendant requested that the cause should be removed to the federal court, because in a proper case a party has the right to the opinion of the federal court on every question that may arise in the case, not only in relation to the pleading and merits, but to the service of process ; and it would be contrary to the manifest intent of the act of congress to hold that a party who has a right to remove a cause is foreclosed as to any question which the federal court can be called upon under the law to decide; and I have no doubt this is such a question."

On the contrary, it was said by Mr. Justice CURTIS, in *Sayles* v. *Insurance Co.*, 2 Curt. 212, and, it seems to me, with great force, that the de-

sign of the act of congress was to enable citizens of other states to re-move their cases here for a trial of their merits; and that when a defendant—

"Appears in the state court, files a petition to remove the action, gives a bond to enter it in the circuit court, and actually enters it there, he has thereby waived any personal privilege he might have had to be sued in another district. If pleading to the action amounts to a waiver of such a privilege, upon the ground that he ought not afterwards to be heard to object to the means by which he was brought into court, I do not perceive why these proceedings should not have the same effect. The defendant comes in, becomes the actor, treats the suit as one properly instituted, removes it to another court, and enters it there, and then says he was not obliged to appear at all, and the state court in effect had no suit before it. This, I am of opinion, he cannot do. I consider that this court will not look back to inquire into or try the question whether the state court had jurisdiction. The act of congress allows defendants to remove actual and legally pending suits from the state courts. If this was not such a suit, the defendant should not have brought it here. By bringing it here he voluntarily treats it as properly commenced and actually pending in the state courts, and he cannot, after it has been entered here, treat it otherwise."

In answer to the suggestion that this would prevent citizens of other states from trying in the federal court the question whether the state court had jurisdiction, the justice said:

"Not so. If the state court had no jurisdiction, and the defendant does not appear, its proceedings are all void, and may be shown to be so in an action brought in this court against any one who meddles with the person or property of the defendant under the color of such proceedings. The only objections which the defendant will be precluded from trying here are technical objections which do not affect the merits; and I see no good reason why he should not be prevented from trying them here."

From the view I take of the nature of the present action it becomes unnecessary to decide whether the bringing and entering of the suit here by the defendant was such an appearance as precluded the objection to the exercise of jurisdiction over him, or whether the decision of the state court that the service of summons upon defendant was a valid service is an adjudication of that question binding upon this court. The object of the suit, in part, is to reach and control the title to certain lands and water, and certain interests in certain other lands situated in this state and within this judicial district. To the extent, at least, of determining the title to and interests in the lands and water in question, I think the service of summons on defendant by publication, concerning the regularity of which no question is made, was a valid service under the state statutes, and sufficient to authorize a valid decree in the suit. Whether, should the facts warrant it, such decree may also establish a trust in respect to the moneys and other property alleged to have been unlawfully received by defendant, and include a valid money judgment against him, under the principle that, where jurisdiction is acquired against the person by the service of process or by a voluntary appearance, a court of general jurisdiction will settle the matter in controversy between the parties, need not now be determined. In the late case of *Arndt* v. *Griggs*,

10 Sup. Ct. Rep. 557, the supreme court held that it is the established doctrine of that court that a state has power by statute to provide for the adjudication of title to real estate within its limits, as against non-residents who are brought into court only by publication, and that it was not the intention of the court in the case of *Hart* v. *Sansom*, 110 U. S. 151, 3 Sup. Ct. Rep. 586, to overthrow the series of cases affirming that power; on the contrary, that the court in *Hart* v. *Sansom* distinctly recognized it by saying, among other things, that—

"It would doubtless be within the power of the state in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose."

And in *Arndt* v. *Griggs* it is added:

"Of course it follows that, if a state has power to bring in a non-resident by publication for the purpose of appointing a trustee, it can in like manner bring him in and subject him to a direct decree."

The court in *Arndt* v. *Griggs* cited and reviewed the cases upon the subject at length; among others that of *Boswell's Lessee* v. *Otis*, 9 How. 336, where, said the court,—

"Was presented a case of a bill for a specific performance and an accounting, and in which was a decree for specific performance and accounting, and an adjudication that the amount due on such accounting should operate as a judgment at law. Service was had by publication, the defendants being non-residents. The validity of a sale under such judgment was in question. The court held that portion of the decree and the sale made under it void; but, with reference to jurisdiction in a case for specific performance alone, made these observations: Jurisdiction is acquired in one of two modes: *First,* as against the person of the defendant, by the service of process; or, *second,* by a procedure against the property of the defendant within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment beyond the property in question, and it is immaterial whether the proceeding against the property be by an attachment or by bill in chancery. It must be substantially a proceeding *in rem.* A bill for the specific execution of a contract to convey real estate is not strictly a proceeding *in rem* in ordinary cases; but, where such a procedure is authorized by statute on publication without personal service of process, it is substantially of that character."

If a bill for the specific execution of a contract to convey real estate is substantially a proceeding *in rem*, where by statute service of process in such suit may be had by publication, surely a suit to establish a trust in real estate is of the same character in cases where the statute authorizes a similar service. In the case of *Pennoyer* v. *Neff*, 95 U. S. 714, 727–734, in which the question of jurisdiction in cases of service by publication was considered at length, the court, by Mr. Justice FIELD, thus stated the law:

"Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or lien respecting the same, or to partition it among different owners, or, where the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings *in rem.* * * * It is true that

in a strict sense a proceeding *in rem* is one taken directly against property, and has for its object the disposition of the property without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the state they are substantially proceedings *in rem,* in the broader sense which we have mentioned."

The principle of these cases, in my opinion, sustains jurisdiction here to the extent, at least, of settling the rights of the parties in respect to the real property in question. The motion to dismiss the suit is denied.