[Civil No. 1428. Filed April 13, 1915.]

[147 Pac. 722.]

JENNIE F. HOOK, Individually and as Executrix of the Last Will and Testament of PETER F. HOOK, Deceased, Plaintiff-Appellant, v. HERMAN H. HOFFMAN, Defendant-Appellee.

1. JUDGMENT — PROCESS TO SUSTAIN — PUBLICATION — PRAYER FOR RELIEF.—The fact that plaintiff, in a suit in which the defendant was served by publication, asks for relief, which cannot be given without personal service or appearance, does not prevent the court from acquiring jurisdiction by constructive service to grant the relief that is proper on such service.

2. PROCESS— SERVICE BY PUBLICATION — STATUTES — VALIDITY.— Civil Code of 1913, paragraphs 447–451, providing for constructive service, which by their terms apply to all actions, are not for that reason invalid, when applied to an action in which constructive service is proper.

3. JUDGMENT—PROCESS TO SUSTAIN — PUBLICATION — PERSONAL JUDGMENT.—Where the defendant is served only constructively, no personal judgment can be rendered, nor can the defendant be required to do some specific act, but the action must partake of an action *in rem*.

4. CORPORATIONS—"CERTIFICATE OF STOCK."—"Certificates for corporate stock," while in themselves property and transferable by indorsement, with the elements of negotiability, are not the shares of stock, but merely evidence of their ownership.

5. CORPORATIONS—"SHARE OF CAPITAL STOCK"—NATURE OF PROPERTY. A share of capital stock is an intangible thing, technically known as a chose in action, being the interest or right which the owner has in the management of the corporation, in its surplus profits, and in its assets after dissolution.

6. COURTS — JURISDICTION — SITUS OF PROPERTY.—All property must have a situs which governs the jurisdiction of courts over it; that of real property being always fixed, that of tangible chattels being the place where they happen to be, and that of ordinary choses in action being the owner's domicile.

7. COURTS—JURISDICTION—SITUS OF PROPERTY—SHARES OF STOCK.— The situs of shares of stock in a corporation, as distinguished from the certificate, for the purpose of determining the jurisdiction of courts, is in the jurisdiction where the corporation was created, whose laws alone give the shares any existence, though the owner thereof is a nonresident of that jurisdiction.

8. CORPORATIONS—SERVICE BY PUBLICATION—NATURE OF ACTION—OWN-ERSHIP OF CORPORATE STOCK.—An action to determine the owner-ship of shares of stock in a domestic corporation, which have their situs immovably fixed within the state, is so far an action in rem that the courts of the state may bind all parties as to the owner-ship thereof, though such courts acquire jurisdiction over some of the claimants only by constructive service, especially in view of Civil Code of 1913, paragraph 552, providing that a decree for the delivery of personal property may pass the title thereto without any act to be done on the part of the party against whom the decree is rendered.

9. CORPORATIONS — SERVICE BY PUBLICATION — NATURE OF ACTION — SEIZURE OF PROPERTY—CORPORATE STOCK.—Since such stock cannot be removed from the partial jurisdiction of the court by the owner, it is not necessary to the jurisdiction that it be seized under some process.

10. ACTION—NATURE—ACTIONS IN REM—"RIGHT IN REM"—"RIGHT IN PERSONAM."—Actions *in rem* apply to personal property as well as to realty, particularly to personal property like shares in corporate stock, which from its nature has a fixed situs, since primarily a "right *in rem*" is one available against persons generally, while a "right *in personam*" is one available exclusively against certain or determinate persons.

11. ACTION—NATURE—"ACTION QUASI IN REM"—"ACTION IN REM."— Actions which seek to reach and dispose of property owned by the parties, or in which they have an interest, are not strictly "actions *in rem*," which are for the purpose of disposing of the thing itself, without regard to the title of particular claims, but may be termed "actions *quasi in rem*."

12. COURTS—JURISDICTION—TERRITORIAL LIMITS.—The courts of a state have jurisdiction over persons and property, coextensive with the limits of the state, and supreme, except as restrained by the fed-eral Constitution.

13. CONSTITUTIONAL LAW — DUE PROCESS OF LAW — ACTION AGAINST NONRESIDENT.—It is not contrary to the due process clause of the federal Constitution for a state court to take jurisdiction of an action directed against or only affecting property located within the state, if reasonable notice thereof is given to nonresident de-fendants.

14. CORPORATIONS—SHARES OF STOCK—ACTION TO DETERMINE OWNER-SHIP—JURISDICTION—PARTIES.—In an action against a nonresident defendant to determine the ownership of shares of stock in a do-mestic corporation, the failure to join the corporation as defend-ant, though it may render the decree ineffectual, does not deprive the court of jurisdiction, under Civil Code of 1913, paragraphs 468 (4), 469, making a defect of parties a ground of demurrer or a

defense by answer, and section 409 providing for the bringing in of additional parties necessary for a full determination of the controversy.

15. CORPORATIONS—SHARES OF STOCK—ACTION TO DETERMINE OWNERSHIP—JURISDICTION—PARTIES.—The fact that *lis pendens* does not apply to actions for corporate stock, and that such stock may therefore be sold to an innocent purchaser before trial, does not defeat the jurisdiction of the court over an action against a nonresident defendant to determine the ownership of the stock of the domestic corporation, since *lis pendens* does not affect the question of jurisdiction, but only of notice.

[As to right of state to authorize entry of personal judgment on service of process on resident outside of state limits, see note in Ann. Cas. 1912D, 695. As to validity of statute providing for constructive service on nonresident or unknown claimants to land, see note in Ann. Cas. 1914D, 677. As to what are local and transitory actions, see note in 22 Am. St.. Rep. 22. As to jurisdiction over citizens of another state or country, see note in 6 Am. St. Rep. 179. As to jurisdiction over foreign corporations, see notes in 85 Am. St. Rep. 905; 89 Am. St. Rep. 654.]

APPEAL from a judgment of the Superior Court of the County of Cochise. A. C. Lockwood, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. Eugene S. Ives, for Appellant.

Messrs. Ellinwood & Ross, for Appellee.

FRANKLIN, J.—The defendant in this action is a resident of the state of Ohio. He was served by registered mail, and also had actual notice by being served personally in that state with a copy of the summons and complaint herein. The defendant appeared specially under the statute for the purpose of objecting to the jurisdiction. The ground of objection being that in this kind of action the court could acquire no jurisdiction of the person of defendant by this mode of service, such service not being due process of law, within the meaning of the Constitution of Arizona and the Constitution of the United States. The court sustained the objection, and the appeal is prosecuted from the order.

Criticism is made of the allegations of the complaint, which is in two counts, and the prayer for relief. But for the purpose of determining the question of jurisdiction presented, we will consider the complaint as presenting what we believe it was intended to present; that is, the ownership of certain shares of stock in a corporation organized and existing under the laws of Arizona, the corporation having its principal place for the transaction of business at Bisbee, Arizona, and certificates representing said stock being held by the defendant. The court should, we think, look to the substance rather than to the form of actions, or to the manner in which plaintiff may have characterized it, and not, as under the common-law procedure, pay strict regard to the technical distinction between different forms of action. 1 Corpus Juris, *Actions* sec. 133. It is clear that in substance the object of the complaint seeks to establish the ownership of the plaintiff in the stock described. It is premature to consider now the sufficiency of the complaint to state a cause of action, or the difficulties which may beset the plaintiff in the progress of the cause, should she be successful in the present action.

There is but one question, then, to be determined: Is the court enabled to obtain jurisdiction in this action to decide the ownership of the stock by constructive service of process upon the nonresident defendant? The mere fact that a party asks a greater measure of relief than can be given without personal service does not deprive the court of jurisdiction to grant such relief as is proper under constructive notice. Very often, especially in equity suits, parties ask for more relief than they are entitled to, but it would be a peculiar doctrine to hold that the mere asking for too much relief would be an obstacle to rendering a decree to which the plaintiff is entitled. It is only necessary to determine whether, upon such service, the court can grant any relief at all. *Smith* v. *Smith,* 123 Minn. 431, 52 L. R. A. (N. S.) 1061, 144 N. W. 138; *Reeves* v. *Pierce,* 64 Kan. 502, 67 Pac. 1108; *Porter Land etc.* v. *Baskin* (C. C.), 43 Fed. 323.

The laws of Arizona provide for constructive service of process. Paragraphs 447 to 451 of the Revised Statutes of Arizona 1913 provide, without any qualification whatever, that, when any party to a suit shall make affidavit that the defendant is a nonresident of the state, service of the sum-

mons, if the residence of the defendant be known to affiant, may be made by publication in a newspaper, and depositing in the postoffice a copy of the summons and complaint, addressed to such defendant at his residence. The personal service of a copy of the summons and complaint upon such defendant out of the state shall be equivalent to such publication and deposit in the postoffice. It also provides for such service by registered mail. Either of the methods pursued will be effective as constructive notice.

While the statute quoted is general and may in terms apply to all actions, it is not invalid when applied to a suit partaking of the nature of an action *in rem. Arndt* v. *Griggs,* 134 U. S. 316, 33 L. Ed. 918, 10 Sup. Ct. Rep. 557; *Roller* v. *Holly,* 176 U. S. 398, 44 L. Ed. 520, 20 Sup. Ct. Rep. 410; *Perkins* v. *Wakeman,* 86 Cal. 580, 21 Am. St. Rep. 67, 25 Pac. 51; *Silver Camp M. Co.* v. *Dickert,* 31 Mont. 488, 3 Ann. Cas. 1000, 67 L. R. A. 940, 78 Pac. 967.

Of course, upon constructive service of summons, no judgment against defendant personally may be given; that is, to determine merely the personal rights and obligations of the defendant. Nor can the court require the defendant to do some specific act, such as was the effect of the judgment in *Hart* v. *Sansom,* 110 U. S. 151, 28 L. Ed. 101, 3 Sup. Ct. Rep. 586. In that case the judgment against a nonresident was based on service only by publication in a newspaper. Such judgment rendered on service by publication against the nonresident defendant was held to be beyond the jurisdiction, since it was in the ordinary form of a decree for the removal by the nonresident defendant of a cloud upon the plaintiff's title. Where the suit is brought against a nonresident by constructive service, it must partake of the nature of an action *in rem,* or jurisdiction will not be acquired to render a valid judgment. In fine, if the suit is merely *in personam,* constructive service upon a nonresident is ineffectual. *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565.

Regarding the plaintiff's suit in this aspect—that it is one brought for the purpose of establishing her interest in certain shares of stock in an Arizona corporation—we shall first get some general idea of the nature and characteristics of this peculiar species of property. We shall then ascertain, if possible, whether or not the analogies of decided cases and the

principle of law actuating the decision may serve as our guide in determining the plaintiff's right to maintain this action to judgment upon the mode of service adopted. In short, we shall strive to obtain by the process of abstraction and induction some conception of the *ratio decidendi* or principle to be extracted from the judicial decisions bearing upon this interesting problem.

The distinction between shares of stock and a certificate for the stock, which is its muniment of title or mere evidence and symbol of it, must be preserved, as also the nature of this proceeding, else somewhat of the matter may be obscure. "A certificate of stock," Mr. Cook says, "is from one point of view a mere muniment of title, like a title deed. It is not the stock itself, but evidence of the ownership of the stock; that is to say, it is a written acknowledgment by the corporation of the interest of the stockholder in the corporate property and franchises. It operates to transfer nothing from the corporation to the stockholder, but merely affords to the latter evidence of his rights. It should be clearly understood that the certificate is not the stock, but merely written evidence of the ownership of stock. . . . " 1 Cook, Corporations, 8th ed., sec. 13. "Stock is one thing and certificates another. The former is the substance, and the latter is the evidence of it." *Hawley* v. *Brumagin*, 33 Cal. 394. See, also, 2 Clark & Marshall, Private Corporations, pp. 1160, 1161; Morawetz on Private Corporations, secs. 173, 226; Machen, Modern Law of Corporations, sec. 867; *Jellenik* v. *Huron Copper Min. Co.*, 177 U. S. 1, 44 L. Ed. 647, 20 Sup. Ct. Rep. 559.

Certificates for stock are, of course, tangible property, and, owing to the facility with which the shares may be transferred by indorsement upon the certificate, they have become the basis of commercial transactions in all the large cities of the country. While not negotiable instruments, they are considered as having many, if not all, the elements of negotiability, or, as so often expressed, a *quasi* negotiability. "It may be said in general that, by the operation of the law of estoppel, the purchaser of a certificate of stock, in good faith and for value, may take it free from many claims of previous holders which would be allowed to come in, in the case of the sale of an ordinary chose in action." 1 Cook, Corporations, sec. 13. *Inter partes*, a transfer, however disconnected from the

certificate, would have the same effect as if indorsed upon it. Indeed, in England the transfer of shares is usually separate and distinct from the share certificate. But the practice in America, having origin in convenience merely, of transferring shares by indorsement upon the share certificate, has emphasized the importance of the share certificate, and naturally produces the impression among business men that the certificate is the shares instead of being merely convenient evidence of ownership of shares.

Now, what is this kind of property called shares of stock? It is property of a peculiar kind. It is an incorporeal and intangible thing. It is in the nature of that kind of property technically known as choses in action. Clark & Marshall, Private Corporations, sec. 376; Machen, Modern Law of Corporations, sec. 504. And, in general, a share of the capital stock of a corporation may be defined as the interest or right which the owner, who is called a "shareholder" or "stockholder," has in the management of the corporation, and in its surplus profits, and, on a dissolution, in all of its assets remaining after the payment of its debts. Clark & Marshall, Private Corporations, sec. 376. In *Plimpton* v. *Bigelow,* 93 N. Y. 592, in answering the question, "What are shares of stock, and what right does the owner thereof enjoy?" it is said:

"The right which a shareholder in a corporation has by reason of his ownership of shares is a right to participate according to the amount of his stock in the surplus profits of a corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of the debts."

Chief Justice SHAW answered it when he said that:

"The right is, strictly speaking, a right to participate, in a certain proportion, in the immunities and benefits of the corporation; to vote in the choice of their officers, and the management of their concerns; to share in the dividends or profits; and to receive an aliquot part of the proceeds of the capital, on winding up and terminating the active existence and operations of the corporation." *Fisher* v. *Essex Bank,* 5 Gray (Mass.), 373, 378.

In what we have to say, we do not aspire to mark precisely all distinctions that may exist in these kinds of property denominated certificate for stock and shares of stock, nor is it

necessary, in preserving the distinction, so far as essential to the case in hand, to ignore the fact that, in the transaction of modern business, a purchaser of a certificate for stock for value and in good faith in the ordinary course of business must be accorded such protection as may be consistent with a character of property that passes from hand to hand by assignment. But here it is only necessary to emphasize that such transactions do not preclude the courts of this state in a proper case from entertaining an action which has for its subject matter the ownership of specific shares of stock in a corporation created and domiciled here. To this extent transactions in stock certificates must be subordinated to the laws of this jurisdiction. Nor should the principle of law be obscured that shares of stock are property of such a peculiar nature that such shares may, for certain purposes, have a situs at two separate places at the same time. The decisive question here, however, is to ascertain whether an action which has for its subject matter ownership of stock should be brought in the home of the holder of the certificate for the shares, or may such action be brought where the shares are located, and jurisdiction obtained by constructive service.

All property must have its situs; that is, its situation or location. Real estate has always a fixed situs, while personal estate has no such fixed situs. The law *rei sitae* regulates real, but not the personal, estate. Story, Conflict of Laws, sec. 379.

Real property has such a fixed situs because it is immovable and indestructible. It must always be and always will remain in the same location. Tangible chattels, however, are movable and also destructible, and therefore their situs is of the place where they may happen to be at any particular time. They may be at one place to-day and another place to-morrow, or else have been totally destroyed. But ordinary choses in action separated from the ownership thereof have no local situs, and so this kind of property is usually said to be governed by the law of the place of the owner's domicile. This is not because they have any local situs in themselves, but because they follow the person of their owner, and that place is commonly the only place where courts have jurisdiction over him.

The rule applicable to the situs of shares of stock was applied by the supreme court of the United States, in the case of *Jellenik* v. *Huron Copper Min. Co.,* reported in 177 U. S. 1, 44 L. Ed. 647, 20 Sup. Ct. Rep. 559. In that case, speaking of the shares in a Michigan corporation, it was said:

"The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner."

The text of Mr. Cook is in accord with the Jellenik case, He says:

"Legal proceedings against the stock may be initiated at the domicile of the corporation. A claimant of stock in a corporation may institute suit at the place where the company is incorporated for the purpose of obtaining possession of the stock, even though the holders of the stock are nonresidents and are brought into the case only by publication and substituted service. The court acquires jurisdiction over the defendants." 1 Cook on Corporations, sec. 12.

Again the author says:

"It is a well-established principle of law that shares of stock may, for certain purposes, have a situs at two separate places at the same time. For the purpose of suits concerning rights to its title, for taxation, and for a few other purposes, shares of stock follow the domicile of the stockholder. On the other hand, it has at the same time a situs where the corporation exists, and this situs may be for the purposes of suits concerning title to the stock, for attachment and execution, and for various other similar purposes."

The language of Mr. Cook just quoted may be reconciled by keeping in view the distinction between the certificate for the shares and the shares themselves. The certificate for the stock, being tangible and movable property, is presumed to accompany the holder of the legal title thereto, and such certificate may so far represent the shares themselves as to give the latter the situs of the certificate for certain purposes.

· Speaking of the jurisdiction over a certificate as jurisdiction over the stock, Clark & Marshall have this to say:

"A court can exercise jurisdiction over a certificate of stock—that is, over the certificate itself, as distinguished from the stock it represents—if the certificate is within its jurisdiction. For example, there can be no doubt that replevin will lie to recover possession of a certificate of stock, if the certificate is within the jurisdiction of the court, although the corporation may be in another state, so that the situs of the shares of stock is in the other state. In the nature of things, however, since a certificate of stock is not the stock itself, but mere evidence of the stockholder's interest in the corporation—a distinction which is thoroughly well settled—jurisdiction over a certificate of stock can confer no jurisdiction over the stock itself, where the stock is not within the jurisdiction of the court. The situs of shares of stock is at the residence of the corporation, and does not follow the certificate. As we have seen, the situs of shares of stock for the purpose of execution or attachment is in the state where the corporation resides, and not in the state where the stockholder resides, or where the certificate may be found, and, in the absence of peculiar circumstances, they cannot be taken in execution or attachment in any other state. Shares of stock cannot be taken on execution or attachment by levying upon or seizing the certificate only, and a court can acquire no jurisdiction over stock by virtue of an attachment merely because the certificate of stock is within its jurisdiction." Clark & Marshall, Private Corporations, sec. 378h.

It is apparent from a careful analysis of the Jellenik case, *supra,* that the supreme court of the United States has announced the doctrine that, in a suit to determine who is the real owner of stock in a corporation, the stock may be deemed to be immovably fixed in the domicile of the corporation, and that, notwithstanding the nonresidence of a defendant, who has the evidence of such ownership, to wit, the certificate for the stock, that jurisdiction to determine who is the real owner thereof may be obtained by constructive service. The Jellenik decision, in the feature pertaining to constructive service, was based upon the act of March 3, 1875 (chapter 137, section 8, 18 Stat. 472 [U. S. Comp. Stats. 1901, p. 513]), authorizing a United States court to obtain jurisdiction of defendants by

publication of notice or service of process outside of its terri-
tory in an action "to enforce any legal or equitable lien upon,
or claim to, or to remove any encumbrance or lien or cloud
upon the title to real or personal property within the district
where such suit is brought." This statute is similar in its
essentials and grounded upon a sense of the same public pol-
icy as those of the several states authorizing substituted
service. The statute and decision applying it being in accord
with the public policy found in the enactments of most, if not
all, of the states, which requires the status of its inhabitants
and their rights of property localized within their respective
territorial dominions to be settled by the tribunals of such
locality, and that the inhabitants of a state or district of the
United States may not be compelled to go elsewhere to litigate
such questions with persons not subject to such local juris-
diction.

In the Jellenik case, suit was brought in a United States
court for a district in Michigan by certain stockholders in
a Michigan corporation against the corporation and certain
nonresident defendants. It was charged that, by reason of
certain fraudulent transactions set forth in the bill in equity,
the nonresident defendants had acquired the legal title to
certain shares of the capital stock of the company owned by
the complainants, who prayed to be reinstated as full owners
of the legal and equitable title to the shares. Service on the
nonresident defendants was had by publication, but they did
not appear, and the district court dismissed the bill, saying
it was powerless to afford any effective aid to the complain-
ants. The supreme court set aside the order dismissing the
action and remanded the case, with directions to the lower
court to proceed, holding that the complainants were entitled
to the relief asked on the ground that the stock must be re-
garded as legally situate in Michigan, and therefore within
the jurisdiction of the court, although the defendants, the
legal owners of it, were residents of other states and had not
appeared. *Jellenik* v. *Huron Copper Min. Co.*, 177 U. S. 1,
44 L. Ed. 647, 20 Sup. Ct. Rep. 559. See, also, *Smith* v.
*Smith,* 123 Minn. 431, 52 L. R. A. (N. S.) 1061, 144 N. W.
138; *Jones* v. *Gould,* 149 Fed. 153, 80 C. C. A. 1; *McKane* v.
*Burke* (C. C.), 132 Fed. 688; *Gamble* v. *Dawson,* 67 Wash. 72,
Ann. Cas. 1913D, 501, 120 Pac. 1060; *People's National Bank*

v. *Cleveland,* 117 Ga. 908, 44 S. E. 20; *Patterson* v. *Farming-ton St. Ry. Co.,* 76 Conn. 628, 57 Atl. 853; *Fahrig* v. *Milwaukee etc. Breweries,* 113 Ill. App. 525; *Fowler* v. *Jenks,* 90 Minn. 74, 95 N. W. 887, 96 N. W. 914; *Andrews* v. *Guayaquil etc. R. Co.,* 69 N. J. Eq 211, 60 Atl. 568; *Sohege* v. *Singer Mfg. Co.,* 73 N. J. Eq. 567, 68 Atl. 64.

In the instant case we have an action calling upon the courts of this state to determine who is the real owner of certain shares of the capital stock of a corporation organized under and having its domicile in this jurisdiction, and the capital stock of which is property existing only by virtue of the laws of this state, and notwithstanding a certificate for the stock is treated for some purposes as property of a *quasi-*negotiable character, the stock itself, by the very law that created it, can only be transferred on the books of the company in this state. We feel convinced that such an action is so far an action in the nature of a proceeding *in rem* that it authorizes the courts of this state, so far as such property is affected only, to bind all persons with respect to their interest in such property upon giving them reasonable notice in the manner prescribed by law. The *res* being within the jurisdiction of the court, and immovably situate in such jurisdiction, the substituted service will give such jurisdiction over the person of the nonresident defendant as to bind him in the determination of the ownership of the *res,* provided that the property be either seized into the possession of the court or brought within its grasp by suitable allegations in the complaint. Especially is this so where by statute expressly or impliedly the decree of the court may operate as a conveyance of the property. Paragraph 552 of the Civil Code of Arizona provides:

"When the judgment is for the conveyance of real estate, or for the delivery of personal property, the decree may pass the title to such property without any act to be done on the part of the party against whom the judgment is rendered."

The following authorities may also be consulted: *Loaiza* v. *San Francisco,* 85 Cal. 11, 20 Am. St. Rep. 197, 9 L. R. A. 376, 24 Pac. 707; 26 Am. & Eng. Ency. of Law, 2d ed., p. 132; *Epperly* v. *Ferguson,* 118 Iowa, 47, 91 N. W. 816; *Wait* v. *Kern River M. M. & D. Co.,* 157 Cal. 21, 106 Pac. 98.

Where the property is movable and destructible, there may be good reason for seizing it into the possession of the court, so that the final judgment may have something to operate upon; but where the *res* is immovable property within the jurisdiction of the court, and is brought within its grasp by being made the subject matter of the action, and the object of the action is to reach and dispose of such property or some interest therein, the nonresident defendant having actual notice thereof by being served out of the state personally with a copy of the summons and complaint, it would appear that the necessity for a seizure of the *res* is wanting. The views we have expressed are fully consistent with the principle recognized in *Pennoyer* v. *Neff,* 95 U. S. 714, 24 L. Ed. 565. That jurisdiction to hear and determine in this class of cases may be obtained wholly and entirely by substituted service, see *Arndt* v. *Griggs,* 134 U. S. 316, 323, 33 L. Ed. 918, 10 Sup. Ct. Rep. 557; *Corson* v. *Shoemaker,* 55 Minn. 386, 398, 57 N. W. 134; *Shepherd* v. *Ware,* 46 Minn. 176, 24 Am. St. Rep. 212, 48 N. W. 774; *Bennett* v. *Fenton,* 41 Fed. 286, 10 L. R. A. 500; *Perkins* v. *Wakeham,* 86 Cal. 580, 21 Am. St. Rep. 67, 25 Pac. 51; *Lane* v. *Innes,* 43 Minn. 141, 45 N. W. 5; *Robinson* v. *Kind,* 23 Nev. 330, 340, 47 Pac. 1, 977; *Ormsby* v. *Ottman,* 85 Fed. 496, 29 C. C. A. 295; *Porter Land & Water Co.* v. *Baskin,* 43 Fed. 328; *Gallum* v. *Weil,* 116 Wis. 236, 92 N. W. 1091; *Gassert* v. *Strong,* 38 Mont. 18, 98 Pac. 497; *Brown Iron Works* v. *George B. Swift Co.,* 53 Ind. App. 630, 100 N. E. 584, 860; also extended note to *Hollander* v. *Central M. & S. Co.* (109 Md. 131, 71 Atl. 442), annotated in 23 L. R. A. (N. S.) 1135.

The Pennoyer case was a mere personal action, in which a purely personal judgment for the recovery of a money demand was sought and given, and upon notice given merely by publication and without a seizure of specific property; the lack of reasonable notice by such a method being strongly emphasized. The eminent American jurist who wrote that decision spoke for the court in *Galpin* v. *Page,* 3 Saw. 93, Fed. Cas. No. 5206, which is cited in the Pennoyer case. In the Galpin case Judge FIELD, after alluding to the authority of courts being necessarily circumscribed by the limits of the sovereignty creating them, said:

"But over property and persons within those limits the authority of the state is supreme, except as restrained by the federal Constitution. When, therefore, property thus situated is held by parties resident without the state, or absent from it, and thus beyond the reach of the process of its courts, the admitted jurisdiction of the state over the property would be defeated, if a substituted service upon the parties were not permitted. Accordingly, under special circumstances, upon the presentation of particular proofs, substituted service, in lieu of personal service, is allowed by statute in nearly all the states, so as to subject the property of a nonresident or absent party to such disposition by their tribunals as may be necessary to protect the rights of their own citizens. . . . But so far as the statute authorizes, upon such substituted service, a personal judgment against a nonresident, except as a means of reaching property situated at the time within the state, or affecting some interest therein, or determining the status of the plaintiff with respect to such nonresident, it cannot be sustained as a legitimate exercise of legislative power."

Judge FIELD, in the progress of the opinion, puts suits *in rem* into four classes, thus:

"First, those which are directed primarily against particular property, and are intended to dispose of it without reference to the title of individual claimants; second, those which are instituted to determine the status of particular property or persons; third, those which are, in form, personal suits, but which seek to subject property brought by existing lien or by attachment, or some collateral proceeding, under the control of the court, so as to give effect to the rights of the parties; and, fourth, those which seek to dispose of property, or relate to some interest therein, but which touch the property or interest only through the judgment recovered."

After giving an illustration of each class, but not pretending to comprehend all, the court proceeds:

"The third and fourth classes mentioned are not strictly proceedings *in rem;* but, so far as they affect property in the state, they are treated as substantially such proceedings."

Actions *in rem* apply not only to realty, but to personal property. In *Woodruff* v. *Taylor*, 20 Vt. 65, 73, the court said:

"But proceedings *in rem* may be and often are upon personal chattels, directly declaring the right to them."

Primarily rights *in rem* are those which avail against persons generally, and rights *in personam* are those which avail exclusively against certain or determinate persons, and the duties which correlate with rights *in rem* were negative (that is to say, the duty to forbear or abstain), and the obligations which correlate with rights *in personam* some were negative, but some, and most, were positive (that is to say, obligations to do or perform). This distinction pervades the writings of the Roman lawyers, and these terms were devised to comprehend a division of civil actions according to the nature of the duties to be enforced. Ownership or property is given as an instance of a right *in rem*, as a species of *jus in rem*, and in an action to vindicate this "*jus in rem*" we catch historically a marked distinction observed in kinds or sorts of property, as it has the attribute of movability or immovability. The distinction between real, or immovable and indestructible property, and personal, or movable and destructible property, which runs all through our law, is thus, in a measure, an accidental development in the evolution of actions. The Roman law had its actions which partook of the nature of both an action *in rem* and an action *in personam*, or, in other words, actions to vindicate the kinds of rights comprehended in a blending of the expressions "*jus in personam*" and "*jus ad rem*." Mr. Austin says:

"All rights *in personam* are rights to acts and forbearances and nothing more. The species of rights which have been termed *jus ad rem* form no exception. What has been styled *jus ad rem* is an elliptical expression, and is more properly rendered *jus ad rem acquirendum*, or, still more completely, *jus in personam ad jus in rem acquirendum*. That is to say, the person entitled has a right, availing against a determinate person, to the acquisition of a right availing against the world at large, and, by consequence, his right is a right to an act of conveyance or transfer on the part of the person obliged." Austin's Jurisprudence, sec. 528.

So, too, the English lawyers were compelled to make a division of actions and to classify their actions which partook of the nature of both real actions and personal actions. Accordingly, as in Blackstone, actions were classified as real, personal and mixed, because the two classes of actions, real and personal, were not comprehensive or satisfactory, so this triple division of civil actions was introduced, and a class called mixed actions added. " 'Mixed' is a blessed word," say the historians of our early law. "The impatient student who looks down on medieval law from the sublime heights of 'general jurisprudence' will say that most of our English actions are mixed and many of them very mixed." 2 Poll. & Mait. Hist. Eng. Law, 2d ed., 572. For an interesting discussion of the distinction between *in rem* and *in personam*, see 1 Austin, Jurisprudence (Campbell's ed.), 408 et seq., in which the *jus in rem* is contradistinguished to *jus in personam*, and in which the somewhat obscure and ambiguous expression *"jus in rem,"* when standing by itself, catches a borrowed clearness from the expression *"jus in personam,"* to which it is opposed.

Another learned author says:

"Turning to the actions *in rem*, Bracton brings with him from his excursion into Roman law only the expression itself, *'actio in rem,'* and one or two ideas which lie plainly on the surface. Thus he perceives that the action is not based upon obligation in the Roman sense, and that the plaintiff demands a certain thing, not the value or equivalent of it. But Bracton goes further than this, and in a bold, though apparently casual, utterance restricts the action *in rem* in English law to the recovery of immovables (real property) and interests incident thereto, such as the right of advowson and right of common. This departure of Bracton from Roman ideas was perhaps due to a mere caprice of independence rather than to any necessary distinction between the Roman and English law of actions. This whim of Bracton, if it were a mere whim, has had far-reaching effects, and the marks of it are found to-day in that distinction between real and personal property which is peculiar to English law. What reason does he give for the proposition that, in English law, an action for the recovery of a specific chattel cannot be an action *in rem?* 'If,' says he, 'the thing sought to be recovered is a

movable, such as a lion, ox, ass, garment, or other thing determinable by weight or measure, it would seem at first sight that the action would be *in rem* rather than *in personam,* because a specific thing is sought, and because the possessor is in duty bound to restore the thing sued for. But, on the contrary, the action will be *in personam* only because he from whom the recovery is sought is not held exactly to the restoration of the thing, but, in the alternative, either to the return of the thing or its value; and, by paying the value only, he will be discharged whether the thing is produced or not.' Bracton here clearly missed the true principle of classification, for, instead of determining the nature of the action by the duty which it is brought to enforce, he finds the criterion in the nature of the redress which was to be or might be obtained. It would seem that the proposition to which he was here committing English law was a principle erroneously deduced from the fact that, in writs of debt in the detinet, the plaintiff was required to state the value of the chattel sued for. To state the value was certainly highly proper, and indeed necessary, for it might transpire that the chattel was lost or destroyed, or animal dead, in which case it could not be restored. Movables are necessarily destructible, but this furnishes no reason why the action for their recovery should not be classed as an action *in rem*. In Roman law the circumstance that the plaintiff might be compelled, as a last resort, to accept a money compensation instead of the chattel sued for did not result in changing the action from one category to another. It still remained an action *in rem* because of the nature of the fundamental duty. If the defendant failed to restore the thing, he was condemned to pay its value as damages. If Bracton had been content faithfully to copy from the Roman sources, he could have said with perfect consistency that detinue is an action *in rem,* and that it based directly on ownership. Instead of this, our law of ownership in chattels blunders around for two or three centuries, and the right clue to the subject has hardly yet been discovered. From the viewpoint which classifies according to the nature of the duties to be enforced, a triple division of actions is the only proper one—actions based on ownership, actions *ex contractu,* and actions *ex delicto*. The actions based on ownership might be called proprietary actions, or, to use a

Roman term, recuperatory actions. There is no reason in nature or law why the proprietary actions should be restricted to actions for the recovery of immovable property, but such was the result of Bracton's theory. The English law consequently acknowledged no purely proprietary writ for chattels; and detinue, which ought by all means to have been placed in this lost category, has since wandered around among the common-law actions, unable to find its proper place in the procedural system. Bracton and those who came after him would have it that the only actions *in rem* were those brought to vindicate a right to immovables. The action *in rem,* being thus permanently associated with real property, came to be spoken of as a real action.'' 3 Street, Foundations of Legal Liability, p. 39.

While, properly speaking, actions or proceedings *in rem* are against the thing itself, and for the purpose of disposing thereof without reference to the title of particular claimants, the term has in a larger and broader sense been applied to certain actions and proceedings between parties, where the object is to reach and dispose of property owned by them or in which they have an interest; but, as these are not strictly *in rem,* they have frequently and more properly been termed *quasi in rem,* or in the nature of actions or proceedings *in rem.* 1 Corpus Juris., sec. 171, *In Rem* and *In Personam.* See, also, 1 Cyc. 730, 731.

The appellee reviewing the cases, and after abstracting therefrom the peculiarities of the particular case before the court, proceeds to tear them into very tatters. It is urged that such cases are not in point, because the subject matter of the action was either real estate, immovably situate within the state, or, if personal property, it was seized into the possession of the court, or, where the subject matter of the action was shares of stock the corporation itself was brought before the court, or the stock has in some manner been directly attached, impounded or sequestered to await the court's final decision. The appellee admits that the cardinal distinction between real property and personal property rests in the immovability of the former and the movability of the latter, and says that personal property, under the old fiction, is deemed to follow the owner, and it would be strange, indeed, if any class of personal property could be held to be immov-

able; that the term "immovable personal property" is a solecism. If this peculiar species of property may be likened to real estate, the application of many of the cases cited is not resisted, and that, if the corporation had been made a party, the Jellenik case would be in point, does not seem to be controverted. But we have learned that the cardinal distinction between real and personal property is the immovability and indestructibility of the former and the movability and destructibility of the latter, and that, for the purpose of determining the true ownership of stock, it is considered immovably situate in the domicile of the corporation which created it and in the state under and by virtue of whose laws it has its being.

In *Ashley* v. *Quintard* (C. C.), 90 Fed. 84, this resemblance was pointed out. The court says:

"Indeed, in my view, shares of stock more clearly resemble land than movables in the quality of being fixed within the boundaries of the state which created them, and regulates all their qualities and incidents, as property. It is a question of resemblances and analogies, and is capable of no other treatment."

It is no more of a solecism to say immovable personal property than it is to say removable fixtures, nor more contradicting than in the division of actions to use the term *"in rem,"* when, under the particular state of facts, the action is primarily *"in personam."* In the development of the law it is seldom possible, or, when possible, seldom expedient, to discard established terms. In this connection an observation by Mr. Justice HOLMES is peculiarly applicable:

"As long as the matter to be considered is debated in artificial terms, there is danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied." *Guy* v. *Donald,* 203 U. S. 406, 51 L. Ed. 245, 27 Sup. Ct. Rep. 63.

Instead of rejecting convenient terms because they are ambiguous or not comprehensive, it is better to explain their meanings, or, in the language of old Hobbes, "to snuff them with distinctions and definitions," so as to give a better light. When we snuff out the cardinal distinction—immovability—between real property and a certain kind of personal prop-

erty, we have a better and truer light thrown upon the term
"immovable personal property." In the development of the
law of fixtures, the wisdom of such a course is indicated, and
our meaning may gather a borrowed clearness from its con-
sideration.

"No definition has been formulated which meets the general
approval of the courts, and some of our ablest writers treat
the rules without attempting a definition. The great dispute
in terms is that on one side a removable fixture is said to be a
solecism, while, on the other, its better meaning is said to be
things accessory or affixed but removable. Trade fixtures,
agricultural fixtures, gas fixtures, ornamental fixtures, are
terms of common, popular and commercial use to indicate
things which may be removed; and there is no settled con-
sistent practice in the courts confining the term to things not
removable. Practically it matters little whether the name
'fixture' is applied to something removable, or we affirm that
things removable are not fixtures, the question always being
the same, viz., under what circumstances of relation of par-
ties, purpose or interest of annexation and condition of
annexation is the thing removable?" Andrews, American
Law, sec. 597, "Fixtures." So what matters it whether we
use the term "real estate" or "personal property," so far
as concerns the matter before us. It is the situs of the thing
and its quality of immovability that determines the jurisdic-
tion to proceed.

After all, "the reason and spirit of cases make law, not the
letter of particular precedents." So said Lord MANS-
FIELD, a great English judge, in *Fisher* v. *Prince* (1763),
3 Burr. 1363, at page 1364. And so did another great judge
(Chief Justice KENYON) in the case of *Lord Walpole* v.
*Earl of Cholomondeley,* 7 Term Rep., at page 148, make a like
observation:

"The principle is the thing which we are to extract from
cases, and to apply it to the decision of other cases."

If we have perceived the general reasons or principles of
these judicial decisions herein referred to, as abstracted from
any peculiarities of the particular case before the court, we
have ascertained their *ratio decidendi* to be this: That the
jurisdiction of our courts is coextensive with the sovereignty
of the state, embracing the property and persons within its

limits; that, as to such property and persons within those limits, the authority of the state is supreme, except as restrained by the federal Constitution; that it is not repugnant to the due process clause of the Constitution of the United States for this state to provide for reasonable notice to a non-resident defendant by serving him outside of this state personally with a copy of the summons and complaint, where the subject matter of the action is directed against, or only affects, property located in this state; that, where the situs of this property is immovably fixed within its territorial jurisdiction, the court may acquire jurisdicton of the *res* by the filing of a bill in equity having for its subject matter said property and for its purpose an adjudication as between the parties as to who is the real owner thereof; and that shares of stock—this peculiar species of property, though denominated as of the nature of a chose in action, and classified as personal property—has by the analogy of its immobility a strong resemblance to realty, so that, for the purpose of such a suit, it may be governed by like considerations.

It is manifest that, in an action to establish the ownership of the stock, the statute does not provide any means of holding it. Civ. Code 1913, par. 1647. The plaintiff could not have attached the certificate or garnished the company, or otherwise seized the property into the possession of the court; and, from the views we have expressed, we do not deem such a course to be necessary. The certificate is presumably in the possession of the defendant in Ohio.

Nor can we see any reason upon principle or authority, so far as affecting the jurisdiction of the court over the *res* is concerned, the necessity of making the company a party defendant.

Story, in his work on Equity Pleading, states the rule as to when the objection for want of parties may be taken, and the consequence of not bringing the proper parties before the court, thus:

"If the proper parties are not made, the defendant may either demur to the bill, or take the objection by way of plea or answer; or, when the cause comes on to a hearing, he may object that the proper parties are wanting; or the court itself may state the objection, and refuse to proceed to make a decree; or, if a decree is made, it may, for this very defect, be

reversed on a rehearing or an appeal; or, if it be not reversed, yet it will bind none but the parties to the suit, and those claiming under them, so that all the evils of a fruitless or inadequate litigation may sometimes be visited upon the successful party in the original suit, by leaving his title still open to future question and controversy.'' Section 75.

Judge STORY further observes that:

''The mere nonjoinder of a proper party cannot avail the defendant in a bill of review, unless it appears to his prejudice; and there is the more reason for this rule, because the absent person is not barred by the decree, but may in another suit vindicate his rights.''

The matter of raising an objection to a defect of parties plaintiff or defendant is regulated by statute. Civ. Code 1913, pars. 468 (4), 469. The Code further provides:

''The court may, on motion of either party, order additional parties brought in upon such terms as the court may prescribe, and may prescribe the process and manner by which such additional parties shall be brought in.'' Civ. Code 1913, par. 409.

Also that: ''The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of the others or by saving their rights; but, when a complete determination of the controversy cannot be had without the presence of other parties, the court shall order them to be brought in.'' Civ. Code 1913, par. 410.

Generally speaking, a corporation has no interest in the individual ownership of its shares; and, while the corporation was a party, the plaintiff might be enabled to more efficiently guard his interests by injunction or other provisional remedy, such as was invoked in the Jellenik case cited. But this would be for the protection of the plaintiff, not that the defendant is in any way concerned, or by the lack of such a proceeding is any right of his defeated.

The distinction between an action concerning real estate and an action to establish the ownership of shares of stock is sought to be made in the doctrine of *lis pendens.* The function of a *lis pendens* is not to preserve or impound property, but it is to impart notice to third persons in their dealings with it. So far as we are aware, the doctrine of *lis pendens* has never been applied as affecting the question of

XVI Ariz.—36

jurisdiction. The doctrine of *lis pendens* has no application to sales of shares of stock. Cook, Corporations, sec. 364. If so applied, it would destroy the element of negotiability. Machen, Modern Law of Corporations, sec. 844.

It may be true that, while this suit is pending, the defendant may transfer the certificate, and the *bona fide* transferee may perhaps take good title to the stock, and so, if no temporary injunction or other provisional remedy be obtained, a transfer on the books of the corporation may be good. But these are matters with which we are not now concerned. The appellant's rights are cognizable only in equity, and, the subject matter of this suit being immovably fixed within this jurisdiction, the courts of this state are not powerless to proceed by reason of the nonresidence of the appellee.

Recognizing the power of the legislature of this state by virtue of the location within its boundaries of the property which is the subject matter of the action to enable its courts to take jurisdiction upon constructive service of process against the nonresident defendant, and the object of the suit being to establish an ownership in said property, we are of opinion the judgment of the superior court is erroneous.

The judgment is reversed and the cause remanded, with directions to overrule the objections to the jurisdiction, and have such further proceedings, not inconsistent with this opinion, as the law may direct; the defendant to be granted a period of thirty days in which to make his general appearance in the action, if he be so advised.

Reversed and remanded.

ROSS, C. J., concurs.

CUNNINGHAM, J., Dissenting.—The plaintiff asserts title to 50,000 shares of the stock of La Democrata Cananea Sonora Copper Company, a corporation organized and existing under and by virtue of the laws of Arizona. Plaintiff's title to the stock was acquired by means of a promoters' contract, ratified by the said corporation after its organization, by which the promoters became entitled to the stock, and, through plaintiff's testator and another of the promoters, plaintiff acquired her title. The certificates of stock were issued to the defendant, and he holds such certificates. This plaintiff as-

serts title to the shares, alleging that the defendant claims to be the owner of said stock, and that demand has been made upon him for the delivery of the same and the delivery refused.

This appeal does not raise questions based upon the sufficiency of the complaint to state a cause of action, but the question here raised is whether the court can entertain the suit for the purposes for which the action is commenced. Necessarily the complaint, having for its purpose the enforcement of the cause of action attempted to be stated, must be examined to determine whether, upon any theory, the suit may be maintained against a nonresident defendant upon constructive service.

The relief demanded limits the right to recover. Here plaintiff demands an adjudication upon the ownership of 50,000 shares of corporate stock, now issued to and standing in the name of the defendant, and prays that plaintiff's title to said stares of stock be quieted and established, and that defendant be ''directed to cause to be issued and to deliver certificates for said 50,000 shares of stock to the plaintiff, and that the defendant be ordered and directed to deliver up for cancellation 50,000 shares of the stock now held by him,'' that the defendant be required to discover certain facts, and ''for such other and further relief as may be just.''

No argument need be advanced to sustain the position that the defendant must be personally before the court in order that the mandate of the court will affect him, and require him ''to cause to be issued and to deliver certificates for said 50,000 shares of stock to the plaintiff, and that the defendant be ordered and directed to deliver up for cancellation 50,000 shares of the stock now held by him.'' The court must also necessarily hold the defendant within its grasp, in order to require him to discover to the court the other facts complained of and alleged to be within his knowledge.

Whether the court may determine the title to the stock and quiet plaintiff's title thereto, in the absence of the defendant holding the legal evidence of title, is the only question involved for decision. The prayer for general relief is effective only after a trial on the merits, and such general relief may then be granted as may seem equitable and just upon the facts shown.

"A state court .cannot determine the validity of any demand against a nonresident without personal service or personal appearance, beyond such as may be satisfied by his property within its jurisdiction." *Freeman* v. *Alderson,* 119 U. S. 185, 30 L. Ed. 372, 7 Sup. Ct. Rep. 165.

No effort is here made to satisfy any demand of plaintiff out of defendant's property, within the jurisdiction of the court. Plaintiff's demand here is to have plaintiff's title established. Plaintiff necessarily denies that the property affected belongs to defendant at all. The shares of stock are within the jurisdiction of the court, and must remain there, whoever is or may be or become the owner. The interest represented by the shares of stock is held by the corporation for the benefit of the true owner. *Jellenik* v. *Huron Copper Min. Co.,* 177 U. S. 1, 44 L. Ed. 647, 20 Sup. Ct. Rep. 559.

In order to grant the relief demanded, the court must, by its decree, establish the plaintiff's title to the shares of stock and find that plaintiff is entitled thereto, and cause a transfer of the title wrongfully standing in defendant's name to the plaintiff. If the decree of the court cannot be given effect, the decree in nugatory as a necessary consequence. This is the principle upon which the right to proceed against the thing itself, in the absence of the owner, is based. This is borne out in Judge FIELDS' opinion quoted in the majority opinion of the court. To repeat that quotation is of advantage to a clear understanding of what I mean:

Suits *in rem* are divided into four classes: "First, those which are directed primarily against particular property, and are intended to dispose of it without reference to the title of individual claimants; second, those which are instituted to determine the status of particular property or persons; third, those which are, in form, personal suits, but which seek to subject property brought by existing lien or by attachment, or some collateral proceeding, under the control of the court, so as to give effect to the rights of the parties; and, fourth, those which seek to dispose of property, or relate to some interest therein, but which touch the property or interest only through the judgment recovered."

If this action comes within any of the classes of actions thus described, it comes within either the third or the fourth class. If within the third class, then the property must be brought

under the control of the court, "so as to give effect to the rights of the parties." The property is concededly within the territorial jurisdiction of the court, and is held by the corporation in trust for the owner. The corporation is not before the court in any capacity, as adverse owner, as trustee, as stakeholder, or at all. If the corporation was brought before the court by some collateral proceeding, so that it is subject to the orders of the court, as regards these shares of stock, then the property, the shares of stock, would be under the control of the court, and the court would then have the power "to give effect to the rights of the parties." Without the presence of the corporation in court, the shares of stock cannot be transferred by a decree of the court to that effect. Paragraph 2106, Civil Code of 1913, controls, and is as follows:

"Transfer of the stock (of corporations) shall not be valid except as between the parties thereto, until the same is regularly entered upon the books of the company so as to show the names of the persons by whom and to whom the transfer is made, the number or other designation of the shares, and the date of the transfer. . . . "

By this statute the decree of the court establishing plaintiff's title to the shares of stock standing in the defendant's name would be ineffective for any purpose of transfer until the same is regularly entered upon the books of the company. Certainly the shares of stock are not in the control of the court, if the court is powerless to give effect to its decree in that proceeding.

I am of opinion the plaintiff has not brought herself within the third class of cases, *supra.* We have just seen that the decree recovered does not touch the property in the shares, in the absence of some collateral proceedings bringing the corporation before the court.

I am of opinion that the property in the shares of stock involved is not before the court in this action, and the court has no jurisdiction over it, so as to proceed to adjudicate its status as between the adverse claimants and give effect to its decree. For this reason the judgment should be affirmed.